

2005 Decisions

11-17-2005

# Okado v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-3698

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"Okado v. Atty Gen USA" (2005). *2005 Decisions.* Paper 219.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/219

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 04-3698
_____

HELLEN OKADO,

Petitioner

v.

ATTORNEY GENERAL
OF THE UNITED STATES,

Respondent
_____

On Petition for Review from an
Order of the Board of Immigration Appeals
(Board No. A79 733 351)
_____

Submitted Under Third Circuit LAR 34.1(a)
October 27, 2005

Before:  SLOVITER, FISHER and GREENBERG, *Circuit Judges*.

(Filed November 17, 2005    )
_____

OPINION OF THE COURT
_____

FISHER, *Circuit Judge*.

Hellen Okado ("Okado") petitions this Court for review of an order of the Bureau

of Immigration Appeals ("BIA") denying her motion to reopen immigration proceedings.

Okado argues that the BIA abused its discretion because she presented prima facie evidence that she was suffering from AIDS and would be persecuted if she returned to Kenya. Because we find that the BIA's factual findings were supported by substantial evidence and that the BIA ultimately did not abuse its discretion in denying the motion, we will deny the petition for review.

I.

As we write solely for the parties, and the facts are known to them, we will discuss only those facts pertinent to our conclusion. On August 19, 2000, Okado, a Kenyan national, was admitted to the United States on a nonimmigrant student visa to attend Allentown College of St. Francis de Sales in Allentown, Pennsylvania. Okado, however, never attended Allentown. She enrolled in Penn State University and began classes there in the Fall 2001 semester. Okado left Penn State after the Spring 2002 semester when she was diagnosed with tuberculosis.

On January 10, 2003, the Immigration and Naturalization Service ("INS")[1] issued a Notice to Appear, charging that Okado was subject to removal from the United States for failing to comply with the conditions of her nonimmigrant status. On July 2, 2003, an Immigration Judge ("IJ") ordered Okado removed to Kenya; the IJ, however,

---

[1]On March 1, 2003, the INS ceased to exist as an agency of the Department of Justice. Pursuant to the Homeland Security Act of 2002, the enforcement functions of the INS were transferred to the Department of Homeland Security, Bureau of Immigration and Customs Enforcement ("BICE"). *See* Homeland Security Act of 2002, Pub. L. No. 107-296, § 441, 116 Stat. 2135, 2192.

subsequently granted Okado's motion for voluntary departure, and ordered that she voluntarily depart the United States by September 2, 2003. At that time, the IJ informed Okado "that if she was able to resolve her issues with the school and the BICE prior to the expiration of the period of voluntary departure, the court would look favorably upon a motion to reopen."[2]

Okado did not voluntarily depart by September 2, 2003. Instead, on September 4, 2003, a Penn State official sent the BICE a reinstatement application for Nonimmigrant F-1 Student Status on Okado's behalf. On December 11, 2003, Okado obtained counsel and submitted an emergency motion to reopen removal proceedings and to stay deportation.

On January 9, 2004, the IJ issued an opinion denying Okado's motion. The IJ's decision rested primarily on the fact that Okado failed to appeal the order of voluntary departure within the ninety-day time period set forth in 8 C.F.R § 3.23(b)(1).[3] In addition, the IJ noted that she previously informed Okado that the court would look favorably on a motion to reopen if Okado resolved issues regarding her F-1 status with Penn State and the BICE. The IJ noted, however, that "[n]o proof was submitted to the Court that she had been restored to student status by the government and it is ultimately the government, not the school which must agree to her regaining her former F-1 status."

---

[2]Okado apparently did not appeal this decision to the BIA.

[3]The Government does not raise on appeal Okado's failure to comply with the ninety-day time period.

3

On February 9, 2004, Okado appealed the IJ's decision to the BIA. While that appeal was pending, Okado filed an application for asylum and withholding of removal. In that application, dated March 18, 2004, Okado indicated that she was seeking asylum or withholding of removal because, if she was returned to Kenya, she would face persecution as a result of her HIV-positive status. Okado further stated that she did not apply for asylum upon her arrival in the United States because she was not diagnosed HIV-positive until December 2003.

One week later, on March 25, 2004, Okado filed a motion to withdraw her appeal to the BIA and to remand her case to the IJ to consider her asylum claim based upon "newly discovered evidence that has arisen since she was granted voluntary departure." Specifically, the document stated that Okado's asylum application was "based upon new evidence that she is an HIV-positive individual with AIDS." Okado claimed that she discovered she was HIV-positive on December 2, 2003, but that she did not include such information in her December 11, 2003 motion to reopen "because she was still in shock and the extent of her illness had not yet been determined."[4] Okado further stated that she "did not discover that she was HIV positive and therefore did not have a claim for asylum until after the final decision rendered by the Immigration judge." *Id*. In support of her motion, Okado submitted a four-page affidavit, as well as other documentary evidence purportedly establishing her prima facie case for asylum and withholding of removal.

---

[4]In late-December 2003, Okado learned that her HIV deteriorated into AIDS.

In an order dated August 17, 2004, the BIA denied Okado's appeal and stated that it would "adopt and affirm the decision of the Immigration Judge." The BIA determined that Okado fell within a particular social group – HIV-positive individuals. The BIA further found that, although Okado presented evidence that HIV-positive individuals may suffer discriminatory treatment in Kenya, she did not present any evidence that HIV-positive individuals are persecuted in Kenya. *Id*. Thus, the BIA concluded: "We . . . cannot reopen and remand the record because the respondent has failed to establish prima facie eligibility for asylum and withholding of removal." *Id*.

## II.

On September 16, 2004, Okado filed a petition for review of the order of the BIA with this court. We have jurisdiction over a final order of the BIA pursuant to 8 U.S.C. § 1252(a)(1), (b)(2).[5] Because the BIA affirmed and adopted the decision of the IJ, we have jurisdiction to review the decision of the IJ as well. *Abdulai v. Ashcroft*, 239 F.3d 542, 549 n.2 (3d Cir. 2001) ("When the BIA defers to an IJ, a reviewing court must, as a matter of logic, review the IJ's decision to assess whether the BIA's decision to defer was appropriate.").

We apply a mixed standard of review to the BIA's decision: we review the BIA's findings of fact for substantial evidence and the BIA's denial of the motion to reopen for

---

[5]The denial of a motion to reopen proceedings constitutes a final order. *Sevoian v. Ashcroft*, 290 F.3d 166, 171 (3d Cir. 2002).

5

abuse of discretion. *Guo v. Ashcroft*, 386 F.3d 556, 562 (3d Cir. 2004); *Sevoian v. Ashcroft*, 290 F.3d 166, 174 (3d Cir. 2002). A finding is supported by substantial evidence "if a reasonable fact finder could make a particular finding on the administrative record." *Dia v. Ashcroft*, 353 F.3d 228, 249 (3d Cir. 2003) (en banc). Stated differently, under the substantial evidence standard we treat the BIA's factual findings as "conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B); *see Abdille v. Ashcroft*, 242 F.3d 477, 483 (3d Cir. 2001) (stating that the BIA's factual findings must be upheld "unless the evidence not only supports a contrary conclusion, but compels it"). Under the abuse of discretion standard, the decision of the BIA will be reversed only if it is "arbitrary, irrational, or contrary to law." *Sevoian*, 290 F.3d at 174. Ultimately, Okado has the burden of supporting her claim for relief from removal. *Dia*, 353 F.3d at 247.[6]

---

[6]In *Sevoian*, we noted that motions to reopen immigration proceedings are "traditionally disfavored" because of "the need for finality in litigation." *Sevoian*, 290 F.3d at 172 (quoting *Xu Yong Lu v. Ashcroft*, 259 F.3d 127, 131 (3d Cir. 2001)); *see also Guo*, 386 F.3d at 561 (stating the general rule that "motions to reopen are granted only under compelling circumstances"). We further stated that the "'strong public interest in bringing litigation to a close as promptly as is consistent with' a fair opportunity to present claims" is "particularly true when dealing with motions to reopen proceedings, since 'as a general matter, every delay works to the advantage of the deportable alien who wishes to remain in the United States.'" *Sevoian*, 290 F.3d at 172 (internal citations omitted).

III.

In the context of a motion to reopen proceedings, in order to qualify for asylum or withholding of removal on the basis of membership in a particular social group,[7] an alien must establish a prima facie case with respect to the following three elements: (1) identify the specific group that qualifies as a "particular social group"; (2) demonstrate that she is a member of that group; and (3) show that she would be persecuted or has a well-founded fear of persecution based on that membership. *Fatin v. INS*, 12 F.3d 1233, 1240 (3d Cir. 1993). In determining whether an alien has established a prima facie case on a motion to reopen proceedings, we "evaluat[e] . . . the evidence that accompanies the motion as well as relevant evidence that may exist in the record of the prior hearing, in light of the applicable statutory requirements for relief." *Sevoian*, 290 F.3d at 173. The parties do not dispute on appeal that Okado established her prima facie case with respect to the first two elements enumerated above – that she is a Kenyan woman suffering from HIV/AIDS. The core dispute revolves around whether Okado met her prima facie burden of proving that she has a well-founded fear of persecution in Kenya because she is a woman with HIV/AIDS.

---

[7]We have stated that the term "particular social group" refers to "a group of persons all of whom share a common, immutable characteristic." *Fatin v. INS*, 12 F.3d 1233, 1239 (3d Cir. 1993) (quoting *Matter of Acosta*, 19 I. & N. Dec. 211, 233 (BIA 1985)).

The Attorney General has discretion to grant asylum to an alien determined to be a

"refugee" under the Immigration and Nationality Act ("INA"). 8 U.S.C. § 1158(b)(1).

The term "refugee" is a statutory term of art, defined in part under the INA as:

> [A]ny person who is outside any country of such person's nationality, is
> outside any country in which such person last habitually resided, and who is
> unable or unwilling to return to, and is unable or unwilling to avail himself
> or herself of the protection of, that country because of persecution or a *well-*
> *founded fear of persecution* on account of race, religion, nationality,
> membership in a protected social group, or political opinion[.]

*Id*. § 1101(42)(A) (emphasis added). In order to establish a well-founded fear of future

persecution, the applicant must show: (1) she has a fear of persecution in her native

country; (2) there is a reasonable possibility that she will be persecuted upon return to the

country; and (3) the applicant is unwilling to return to that country as a result of her fear.

*Guo*, 386 F.3d at 561 (citing 8 C.F.R. § 208.13(b)(2)(I)). There are both subjective and

objective prongs to the future persecution inquiry. *Abdulrahman v. Ashcroft*, 330 F.3d

587, 592 (3d Cir. 2003); *Abdille v. Ashcroft*, 242 F.3d 477, 482-83 (3d Cir. 2001).[8] We

---

[8]In contrast to asylum, which permits an otherwise deportable alien to remain in the United States, a withholding of removal grants the alien the right not to be deported to a particular country. *Abdulai*, 239 F.3d at 545. The Attorney General is required to withhold removal to a particular country if there is a determination "that the alien's life or freedom would be threatened in that country because of the alien's race religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3). We have noted that the "eligibility threshold for withholding of removal is even higher" than for an asylum claim because the applicant must demonstrate a "clear probability of persecution." *Guo*, 386 F.3d at 561 n.4 (quoting *Senathirajah v. INS*, 157 F.3d 210, 215 (3d Cir. 1998)). Because of this higher standard, if an alien cannot meet the burden as to the asylum claim, the withholding of removal claim necessarily fails as well. *He Chun Chen v. Ashcroft*, 376 F.3d 215, 223 (3d Cir. 2004).

8

have accepted the BIA's definition of the term "persecution" to include "threats to life, confinement, torture, and economic restrictions so severe that they constitute a threat to life or freedom." *Fatin*, 12 F.3d at 1240. Interpreting this definition, we noted that:

> [T]he concept of persecution does not encompass all treatment that our society regards as unfair, unjust, or even unlawful or unconstitutional. If persecution were defined that expansively, a significant percentage of the world's population would qualify for asylum in this country – and it seems most unlikely that Congress intended such a result.

*Id*. at 1240; *see Al-Fara v. Gonzales*, 404 F.3d 733, 739 (3d Cir. 2005) ("Persecution must be 'extreme conduct' to qualify for asylum protection.").

Okado contends that the evidence she submitted with her motion to reopen was sufficient to establish her prima facie case for asylum and withholding of removal to Kenya. The BIA found that, although Okado's evidence suggested she might suffer discrimination in Kenya on account of being afflicted with AIDS, Okado did not present sufficient evidence that "HIV inflicted individuals are *persecuted* in Kenya."

Okado relies upon the following information in her affidavit to support her prima facie case: (1) she belongs to a socially conservative tribe in Kenya which "has little tolerance or understanding of HIV and AIDS"; (2) her tribe will consider her "cursed" and cut her off from other members of the tribe because AIDS is a disease that cannot be cured; and (3) her sister, Phoebe, who also has AIDS, was forced from her job as a teacher, and Phoebe's son was ridiculed by other classmates because of his mother's condition. In addition, Okado relies upon a report authored by the non-governmental

9

organization Human Rights Watch titled "Double Standards: Women's Property Rights Violations in Kenya." Okado quotes the report as stating: "Women with AIDS in Kenya . . . *are essentially condemned to an early death*." Okado contends that the report establishes she "will face an untimely death in Kenya as a result of her AIDS status." Pet.'s Br. at 15.

Examining the evidence presented by Okado, however, we cannot conclude that a reasonable adjudicator would be compelled to conclude that Okado suffered persecution. To support her claim that she would be ostracized and persecuted upon return to Kenya, Okado relied upon the experiences of her sister, Phoebe, a former teacher who died from AIDS in 1998. Phoebe was allegedly sent away by her school headmaster "on assignments in very isolated areas away from the school." In addition, Phoebe's headmaster suspended Phoebe from work and withheld one year of her salary based upon charges of excessive absenteeism. Important for our purposes, all Kenyan teachers are government employees. The Kenyan Teacher's Service Commission, the highest regulatory body for teachers in Kenya, cleared Phoebe of the excessive absentee charges and reinstated her as a teacher. On these facts, it would be reasonable for the BIA to conclude that although Phoebe may have been discriminated against by her headmaster on account of her HIV-positive status, she was not persecuted by the Kenyan government because the government overturned her suspension.

10

Likewise, the Human Rights Watch report does not help Okado establish her prima facie case of a well-founded fear of persecution. That report discusses generally that "[w]omen's rights to property are unequal to those of men in Kenya." With respect to women with HIV/AIDS, the report states that "Kenya's failure to eliminate the discriminatory property inheritance practices *exacerbates the already unimaginable havoc* caused by HIV/AIDS." In addition, Okado mischaracterizes the context of the quote in the report that women with AIDS are "essentially condemned an early death." The full quote, set forth below, states that:

> Women with AIDS in Kenya, virtually all of whom were infected by husbands or regular male partners, are essentially condemned to an early death *when the women's homes, lands, and other property are taken*. They not only lose assets they could use for medical care, but also the shelter they need to endure this debilitating disease.

Thus, the report does not establish that the Kenyan government is targeting Okado's particular social group for persecution, but rather that such individuals are particularly vulnerable under general discriminatory property and inheritance laws that favor males.[9] Moreover, the report notes that the Kenyan government recently adopted an HIV/AIDS strategic plan that focuses specifically on gender. *Id*. On this record, a reasonable fact

---

[9]The report states that such disparate property laws discourage women from leaving violent or abusive husbands. App. 151a. Although Okado's affidavit states that she and her husband experienced marital problems, there are no allegations that she was abused by her husband. In fact, Okado's affidavit suggests that she would return to live with her husband in Kenya and fears that he would suffer persecution because she has AIDS. App. 139a.

11

finder could conclude that Okado does not have a well-founded fear of persecution based upon her status as a Kenyan woman suffering from HIV/AIDS.

The discrimination suffered by Kenyan women afflicted with HIV/AIDS is undoubtedly distressing. Women in general, particularly those suffering with HIV/AIDS, face certain hardships. We review the BIA's decision, however, utilizing a deferential standard based upon the evidence presented by the petitioner accompanying her motion to reopen. Applying this standard, we conclude that the BIA did not abuse its discretion in denying Okado's motion to reopen proceedings. Accordingly, we will deny Okado's petition for review.