

**2006 Decisions**

Opinions of the United
States Court of Appeals
for the Third Circuit

1-26-2006

# Singh v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-4079

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"Singh v. Atty Gen USA" (2006). *2006 Decisions.* Paper 1712.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/1712

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 04-4079
_____

DALIP SINGH,
                                        Petitioner,

vs.

ATTORNEY GENERAL OF THE UNITED STATES,
                                        Respondent
_____

On Petition for Review of an Order of
the Board of Immigration Appeals
U.S. Department of Justice
Executive Office for Immigration Review
(BIA No. A76 123 544)
_____

Argued November 8, 2005
_____

Before: ROTH, FUENTES, and GARTH, <u>Circuit</u> <u>Judges</u>

(Opinion Filed: January 26, 2006)

Maris J. Liss, Esq. [Argued]
George P. Mann & Associates, P.C.
33505 W. Fourteen Mile Road, Suite 20
Farmington Hills, Michigan 48331
        *Counsel for Petitioner*

Peter D. Keisler, Esq.
Linda S. Wernery, Esq.
Hope E. Sanders , Esq.
Sarah Maloney, Esq. [Argued]
Office of Immigration Litigation
United States Department of Justice, Civil Division
P.O. Box 878, Ben Franklin Station
Washington, D.C. 20044
        *Counsel for Respondent*

_____

OPINION OF THE COURT

Garth, <u>Circuit</u> <u>Judge</u>:

Dalip Singh petitions for review of a decision of the Board of Immigration Appeals ("BIA" or "the Board") affirming the denial by an Immigration Judge ("IJ") of his application for asylum and withholding of removal. We will grant the Petition.

I.

In the affidavit submitted by Singh with his Form I-589, and in his testimony before the IJ, Singh claimed the following:

He is a citizen of India, a native of that country's Punjab state, a farmer and a Sikh. Before coming to the United States, he was for many years involved in Akali Dal (the Sikh political party in Punjab), and the struggle for an independent Sikh state, Khalistan.

-2-

Since April 1989 Singh has been an active member of the splinter group Akali Dal (Mann), which is apparently a faction of Akali Dal that broke away from a more moderate faction within that party. Singh's main responsibility as an Akali Dal (Mann) member has been "to spread the policies of . . . Akali Dal (Mann) in different villages and make Sikhs aware of the injustices inflicted upon Sikhs and finally to motivate them to join Akali Dal (Mann) to keep the struggle going."[1]

Singh was arrested and abused by police on three occasions due to his work with Akali Dal (Mann). On Indian Independence Day (August 15) in 1995, Singh was driving other Sikhs from nearby villages to a protest when police stopped him. When Singh questioned the police about their basis for preventing him from attending a peaceful gathering, they began beating him and took him to the police station. There they reprimanded him for "instigating" other villagers, and continued to beat him. With the help of his parents and party members he was released after two days' detention.

In April 1998, Singh organized a meeting of Akali Dal (Mann) leaders at which the party planned to announce publicly that it "would not settle for anything less than [a] separate Sikh State[,] Khalistan." Police raided the meeting, arrested Singh and Jathedar Amarjit Singh ("the Jathedar"), and took them to the police station.[2] During the night,

---

[1] Singh also served as propaganda secretary for Rajinder Kaur Bulara – an Akali Dal (Mann) member whose husband was killed by police due to his political activity – in the December 1989 Parliamentary elections.

[2] In his oral testimony, Singh stated that the police used tear gas, and opened fire, on the crowd during the course of this arrest, but he did not include this information in his

drunk policemen came to the room where Singh and the Jathedar were being held and beat them with canes. Over the next few days, the police hung the Jathedar upside down and hit him on the soles of his feet, and "desecrated" Singh's religion by dragging him by his hair (which, as a Sikh, he wore long), and wondering aloud why his Guru was not coming to his rescue. After four days Singh's family and the leader of his village secured Singh's release. As he was released, the police told Singh he would face serious consequences unless he stopped working with Akali Dal (Mann) and "motivating" Sikhs.

The Jathedar was not so lucky. He passed away as a result of the injuries he sustained while being abused at the police station. On May 6, 1998, Akali Dal (Mann) organized a large gathering in the Jathedar's memory. At the gathering, Singh told those assembled how the police had tortured the Jathedar in front of him.

That evening, police raided Singh's home while he was eating dinner. They threatened that Singh would now "face the same treatment, which [he] described about" the Jathedar. His wife shouted to villagers who had gathered outside his house, asking for help, but one of the policemen pulled out a revolver and said he would shoot anyone who tried to come to Singh's defense. The police then beat Singh in front of his wife and the assembled villagers, and took him to the Ludhiana Police Station, where he was forced to remove his clothes and the symbols of his faith that he was wearing.

At the station, the police beat Singh on his back and feet with rods, pulled his legs

affidavit.

-4-

apart so that he could not walk properly, and removed the fingernails on his left hand with plyers, causing him to bleed profusely.[3] Throughout the abuse, they asked him how he felt now about talking publicly about the torture of the Jathedar, and told him that he would "be eliminated" due to his work opposing the government and his failure to leave Akali Dal (Mann) as he'd been instructed to do. After five days, his family and the leader of his village were able to secure Singh's release by paying Inspector Brar a 50,000 rupee bribe. They took Singh to a doctor, where he was treated for two days.

After he was released, Singh resumed his activities mobilizing Sikhs, enrolling them in Akali Dal (Mann), and organizing gatherings in his area. He also began to work with Kuldip Singh, a former judge of the Supreme Court of India, who was compiling a "People's Commission Report" that documented abductions of – and other abuses against – Sikhs.

In July 1998, police again raided Singh's home and, when they learned he was not there, told his wife that the time had come for someone else to document her husband's abduction. The police then began to raid Singh's house and the houses of his relatives regularly. Singh tried to enlist his village leader to broker peace with the police, but the leader refused, telling Singh that, based on what he had personally heard from the police,

---

[3] On direct examination, Singh stated that his fingernails were removed during his detention in *April* 1998, but on cross-examination and in his affidavit, he stated that his fingernails were removed during his detention in *May* 1998. A note from Singh's doctor that is part of the record appears to indicate that the fingernail incident indeed occurred during the May detention.

if Singh was caught by them again, he would not live to tell the tale. Akali Dal (Mann) members and members of Singh's family advised him at that point to leave India in order to save his life.

With the help of an agent, Singh left India on Novemer 10, 1998 and traveled to Singapore and then Mexico. He entered the United States at or near Brownsville, Texas on November 21, 1998.

Since Singh has been in the United States, the Punjabi police have arrested another Jathedar with whom he had worked closely in Akali Dal (Mann). No one has seen or heard from that Jathedar since.

In April 1999 Singh submitted an application for asylum based on the persecution he claims he has experienced – and a fear of future persecution – on account of his political opinion, religion, and membership in a particular social group. The application was referred to the Immigration Court for its final adjudication. The former Immigration and Naturalization Service[4] served Singh with a Notice to Appear on May 11, 1999, charging him with removability under 8 U.S.C. §1182(a)(6)(A)(I). Singh conceded removability and renewed his asylum application.

---

[4] As of March 2003, "the INS ceased to exist as an independent agency within the United States Department of Justice ['DOJ'] and its functions were transferred to the newly formed United States Department of Homeland Security." *Leia v. Ashcroft*, 393 F. 3d 427, 430 n.4 (3d Cir. 2005). The BIA remains within the DOJ. *Knapik v. Ashcroft*, 384 F. 3d 84, 86 n.2 (3d Cir. 2004) (citing Homeland Security Act of 2002, Pub. L. No. 107-296, §§ 441, 451, 471, 116 Stat. 2135 (2002)).

Singh submitted a significant amount of documentary evidence – some with his application, and more at his October 8, 1999 hearing. This evidence included (1) a letter from the President of Akali Dal (Mann) confirming Singh's membership in the party and discussing abuses Sikhs have suffered in Punjab, (2) affidavits from his father and the leader of his village attesting to the abuse Singh suffered, (3) a note from Singh's doctor certifying that he had treated Singh from May 10 until May 12, 1998, (4) a letter signed by several members of the U.S. House of Representatives calling upon the Chief Minister of Punjab to initiate an independent inquiry into atrocities committed against Sikhs in his state, and (5) copies of several articles from various Indian newspapers about the mistreatment of Sikhs in Punjab.

## II.

The IJ accepted Singh's testimony as credible, but denied Singh's application. In a December 27, 1999 opinion the IJ explained the grounds for this denial: (1) he doubted that Singh's supporting documents were authentic, (2) he found Singh's testimony "vague" and "general," (3) Singh's testimony, in ways unspecified, was not "identical" to the information to which his father testified in his affidavit, (4) it appeared to him that Singh suffered the abuse he allegedly suffered not because of his political opinion, but because he was a "driver and owner of a tractor," and (5) "the descriptions of his injuries when compared with his treatment also appears" – again, in ways unspecified – "to be quite implausible." Singh appealed.

The BIA dismissed Singh's appeal on March 7, 2003.  Though the BIA agreed with the IJ that Singh's application should be denied, it did not explicitly adopt the IJ's reasoning, or defer to his findings; rather, it apparently performed an independent assessment of the record and set forth its own basis for denial.

The BIA began and ended its opinion by stating generally that Singh had "not presented sufficient evidence" to support his claim.  It devoted the greater part of its opinion, however, to discussing not the insufficiency of evidence in Singh's application packet but rather the indicia of Singh's credibility.

The Board observed that Singh's testimony was internally inconsistent, or inconsistent with his asylum application and corroborating documents, on several points.  It gave as examples the facts that (1) though Singh testified on direct examination that his fingernails were removed during his detention in *April* 1998, he stated on cross-examination that his fingernails were removed during his *May* 1998 detention (see footnote 3), and (2) while he testified at his hearing that his periods of detention in April 1998 and May 1998 lasted for <u>four and five days</u> respectively, the village leader's affidavit stated that these periods of detention lasted <u>three and four days</u> respectively.

The BIA noted that "[w]hile these discrepancies, on their own, might not be sufficient to support a finding that all of the respondent's testimony is incredible, they do raise *doubts* regarding the truth of his story.  And the respondent's remaining evidence is not sufficient to overcome these *doubts*" (emphasis added).

The BIA then went on to note three other deficiencies in Singh's application: it

-8-

noted that (1) Singh's testimony was "vague and lacking in detail," (2) Singh "had difficulty answering basic questions about elections and his party's position in the government even though he claimed to be politically active," and (3) Singh's "documentary evidence does little to bolster his claim," citing the previously noted inconsistency between the village leader's affidavit and Singh's testimony, and the fact that "the letter from the doctor also contains dates that are not entirely consistent with [Singh's] account of events."

III.

We have jurisdiction to review final orders of removal under 8 U.S.C. §1252(a)(1). Because the BIA did not expressly adopt part or all of the IJ's opinion, or announce that it was deferring to the IJ's findings, the final order we review is the decision of the BIA alone. *See, e.g., Voci v. Gonzales*, 409 F. 3d 607, 612-613 (3d Cir. 2005); *Kayembe v. Ashcroft*, 334 F. 3d 231, 234 (3d Cir. 2003).

An asylum applicant must demonstrate either past persecution or a well-founded fear of future persecution, that occurs on the basis of one or more characteristics enumerated in the immigration statute, 8 U.S.C. §§1158(b)(1) and 1101(a)(42)(A), and that is "committed by the government or forces the government is either unable or unwilling to control." *Abdulrahman v. Ashcroft*, 330 F. 3d 587, 592 (3d Cir. 2003).

Aliens have the burden of supporting their asylum claims. *Vente v. Gonzales*, 415 F. 3d 296, 300 (3d Cir. 2005). Under some circumstances, credible testimony alone will fulfill this burden. 8 C.F.R. §208.13(a); *Dia v. Ashcroft*, 353 F. 3d 228, 247 (3d Cir.

2003). Under other circumstances, the agency may require documentary evidence in addition to credible testimony. *Abdulai v. Ashcroft*, 239 F. 3d 542, 554 (3d Cir. 2001). An agency finding that an applicant is not credible, or an "adverse credibility determination," is fatal to the applicant's claim. *Dia*, 353 F. 3d at 247.

Whether an asylum applicant has demonstrated past persecution or a well-founded fear of future persecution is a factual determination reviewed under the substantial evidence standard. We must affirm the agency's finding unless "any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. §1252(b)(4)(B).

An adverse credibility determination is also reviewed for substantial evidence. *See Gao v. Ashcroft*, 299 F. 3d 266, 272 (3d Cir. 2004). Before upholding it, we must "ensure that it was 'appropriately based on inconsistent statements, contradictory evidences, and inherently improbable testimony . . . in view of the background evidence on country conditions.'" *Dia*, 353 F. 3d at 249 (citation omitted).

IV.

A.

Generally, when the BIA denies an asylum application, it does so because it makes one of the following findings: (1) the abuse allegedly suffered or feared does not rise to the level of "persecution" within the meaning of the immigration statute, *see, e.g., Al-Fara v. Gonzales*, 404 F. 3d 733 (3d Cir. 2005); (2) the abuse the applicant suffered or fears was or will not be based on his actual or perceived race, religion, nationality, political opinion or membership in a particular social group, *see, e.g., I.N.S. v.*

-10-

*Elias-Zacarias*, 502 U.S. 478 (1992); (3) the abusers are not state actors or parties the state was unable or unwilling to control, *see, e.g., Wu v. Ashcroft*, 393 F. 3d 418 (3d Cir. 2005); (4) the applicant has not suffered past persecution, and it is unreasonable for him to fear future persecution, *see, e.g., Lusingo v. Gonzales*, 420 F. 3d 193 (3d Cir. 2005); (5) the applicant *has* suffered past persecution, but circumstances in his home country have changed such that it is no longer reasonable to fear that he would be persecuted if returned to that country, *see, e.g., Berishaj v. Ashcroft*, 378 F. 3d 314 (3d Cir. 2004); (6) the applicant is credible, but it is reasonable to require some kind of documentary corroboration of his story, and he has failed to provide it, *Abdulai v. Ashcroft*, 239 F. 3d 542 (3d Cir. 2001); or (7) the applicant is not credible, *see, e.g., Xie v. Ashcroft*, 359 F. 3d 239 (3d Cir. 2004).

Here, the BIA denied Singh's application, but did not base its denial explicitly on any of these grounds. It gave no indication whatsoever that its denial was based on grounds (1) through (5) (relating to persecution) above. It gave only oblique indications that its denial was based on grounds (6) and (7), i.e., insufficiency of corroborating evidence and lack of credibility.

B.

As to the "insufficiency of corroborating evidence," the BIA may, of course, require that an asylum applicant – even a credible one – supply corroborating evidence in order to meet his burden of proof. *Abdulai*, 239 F. 3d at 550-554. When it does so, however, it must (1) identify the facts for which it is reasonable to expect corroboration,

-11-

(2) inquire as to whether the applicant had provided information corroborating those facts, and, if not, (3) analyze whether the applicant had adequately explained his failure to do so. *Id.* at 554 (3d Cir. 2001).

The BIA did not engage in that 3-part inquiry here. Its only comment about the documents Singh submitted (i.e., that the information some of them included was inconsistent with some of the information to which Singh testified) went to Singh's credibility rather than to the sufficiency of his proof. Thus, even if the BIA had made it perfectly clear (which it did not) that "insufficient corroboration" was the basis on which it denied Singh's application, the BIA did not satisfy our requirement for an explanation of its decision. Because it failed to furnish that explanation, we are obliged to remand. *See id.* at 555. *See also Voci*, 409 F. 3d at 616-617 (because it was not clear from the BIA's opinion whether the BIA believed the applicant had failed to provide adequate corroboration, and because, even if this had been clear, the BIA did not apply the 3-part inquiry of *Abdulai*, the court sent the case back to the BIA with instructions that it explicitly address the issue on remand).

C.

As to Singh's credibility, we find it significant that the Board here did not make an explicit adverse credibility determination, but rather merely expressed "doubts" about Singh's credibility. Mere "doubts" about credibility are an insufficient basis for denial of an asylum application. If the BIA denies an asylum application solely because it finds the applicant not credible, it must clearly and explicitly state that it has made an adverse

-12-

credibility determination, and that it bases its denial on that determination.[5]

We have several times affirmed the rule that where the BIA makes no *explicit* findings about an applicant's credibility, we must proceed as if the applicant's testimony were credible[6] and determine whether the explicitly stated basis for the BIA's decision is supported by substantial evidence in the face of the assumed (but not determined) credibility. *See Lusingo*, 420 F. 3d at 197 n.5; *Li v. Attorney General*, 400 F. 3d 157, 163-164 (3d Cir. 2005); *Kayembe*, 334 F. 3d at 235. In the cases in which we previously have applied the rule, however, the BIA had said nothing about credibility or had indicated generally that it found the applicant *credible*, and decided the case on other grounds.[7] Here, by contrast, the BIA openly questioned Singh's credibility, and discussed

---

[5] If, on the other hand, the BIA has doubts about an applicant's credibility, but denies his application not on the basis of those doubts, but on another basis altogether, it must make clear for the reviewing court what that other basis is.

[6] We note that Congress codified this rule in the REAL ID Act of 2005. The relevant provision states that "if no adverse credibility determination is explicitly made, the applicant or witness shall have a rebuttable presumption of credibility on appeal." 8 U.S.C. §1158(b)(1)(B)(iii). Because this provision applies only to asylum applications filed after May 11, 2005, it cannot apply to Singh's application.

[7] *See Lusingo*, 420 F. 3d at 197 n.5 & 198-199 (BIA made no determination regarding applicant's credibility, and denied application because it found applicant's fear of future persecution was not objectively reasonable); *Li*, 400 F. 3d at 161 (BIA criticized the IJ's adverse credibility determination noncommittally, but did not make its own credibility assessment, and denied application because it found the mistreatment the applicant alleged did not rise to the level of "persecution"); *Kayembe*, 334 F. 3d at 234-235 (BIA made no finding regarding applicant's credibility, and denied application because it found that the applicant had not proved his Tutsi ethnicity and, that anyway, Tutsis are not subject to persecution in the applicant's home country on the basis of their ethnicity).

thoroughly as a basis for denying the application only credibility-related grounds.

Significantly, the government itself proceeded on the assumption that "the BIA *did not* make an *adverse credibility* determination in this case." *Brief* at 12 (emphasis added).[8]

Moreover, we have repeatedly held that the basis for a BIA determination must be apparent from its opinion; we cannot review the BIA's unexplained conclusion. *See, e.g., Wang v. Attorney General*, 423 F. 3d 260, 270-271 (3d Cir. 2005).

Finally, it is far from obvious that an adverse credibility determination would have been warranted here. The date-related inconsistencies identified by the BIA were trivial, *see, e.g., Senathirajah v. I.N.S.*, 157 F. 3d 210, 221 (3d Cir. 1998) ("Minor inconsistencies in the record such as discrepancies in dates which reveal nothing about an asylum applicant's fear for his safety are not an adequate basis for an adverse credibility finding"), and, at least to some extent, explicable.[9] Moreover, we cannot agree that

---

[8] The government suggests, confusingly, that the BIA accepted Singh's testimony as credible, but denied his claim because the documentary evidence he submitted conflicted with that testimony. It cites *Shardar v. Ashcroft*, 382 F. 3d 318 (3d Cir. 2004) in support of its argument that this is an appropriate conclusion. That case, however, is inapposite. There, the court denied the applicant's claim because the abuse he alleged did not constitute "persecution" within the meaning of the immigration statute, but rather was legitimate prosecution under the laws of Bangladesh.

[9] For example, Singh testified that he was arrested on May 6, 1998 and released "on [the] fifth day." The village leader's affidavit states that Singh was arrested on May 6, 1998 and released May 10, 1998 ("custody of Ludhiana – Police for 4 days"). The difference is explained by whether the first day – May 6, 1998 – is included in the calculation. So viewed, there is no discrepancy between Singh's testimony and the village leader's affidavit.

Singh's description of elections in India and his party's position was inadequate.[10]

Finally, the record does not reveal that Singh's testimony was plagued by the lack of detail of which the BIA complained.[11]

D.

Because we cannot tell what the basis for the BIA's conclusion was we will remand the case to the BIA for clarification and, if necessary, further proceedings. *See Voci*, 409 F. 3d at 613-614 (remanding for further proceedings because though the BIA had determined that the applicant was not eligible for asylum, its "opinion [did] not explain how the BIA reached this result"); *Awolesi v. Ashcroft*, 341 F. 3d 227, 229 (3d Cir. 2003) ("we cannot give meaningful review to a decision in which the BIA does not explain how is came to its conclusion"); *Kayembe*, 334 F. 3d at 238-239 ("When

---

[10] At the portion of the transcript the BIA cited in noting that Singh "had difficulty answering basic questions about elections and his party's position in the government," Singh's attorney was asking Singh to explain why small parties do not participate in every election in India, and the difference between how parties function in India's parliamentary democracy and in the United States' democracy. Singh's inability to give more thorough answers than he gave to these relatively sophisticated questions, in our opinion, does not indicate that he could not answer "*basic* questions about elections and his party's position in the government."

[11] Singh's oral testimony contained significant detail. The affidavit he submitted with his Form I-589 contained even more detail than his oral testimony, and was, for the most part, consistent with that testimony. The BIA did not appear to consider (or at least did not cite) the account of Singh's experiences contained in the affidavit, as an immigration regulation suggests it may. *See* 8 C.F.R. 1208.3(c)(1) ("Information provided in the [asylum] application may be used . . . to satisfy any burden of proof in . . . removal proceedings."). *See Mukamusoni v. Ashcroft*, 390 F. 3d 110, 121 (1st Cir. 2004) (holding that, as a matter of law, the BIA erred when it focused only on an asylum applicant's oral testimony to the exclusion of his affidavit in evaluating the applicant's claim).

deficiencies in the BIA's decision make it impossible for us to meaningfully review its decision, we must vacate that decision and remand so that the BIA can further explain its reasoning.").

For the foregoing reasons, we will GRANT Singh's Petition for Review.