

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-14-2005

# Al-Fara v. Atty Gen USA

Precedential or Non-Precedential: Precedential

Docket No. 02-4580

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"Al-Fara v. Atty Gen USA" (2005). *2005 Decisions.* Paper 1279.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/1279

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**PRECEDENTIAL**

UNITED STATES COURT OF APPEAL
FOR THE THIRD CIRCUIT

———————

No. 02-4580

———————

SAID HUSNI AL-FARA;
BAHYA SAFI,

<u>Petitioners</u>

v.

ALBERTO GONZALES, ATTORNEY GENERAL
OF THE UNITED STATES*

*Caption amended pursuant to Rule 43(c), Fed. R. App. P.

<u>Respondent</u>

———————

On Petition for Review from an Order of the
Board of Immigration Appeals
(D.C. No. 0090-1: A73-623-415;
D.C. No. 0090-1: A73-623-416)

———————

Submitted Pursuant to Third Circuit LAR 34.1(a)
May 27, 2004

BEFORE:  RENDELL and COWEN, <u>Circuit Judges</u> and
            SCHWARZER*, <u>District Judge</u>

                  (Filed: April 14, 2005)

Tahani Salama
1420 Walnut Street, Suite 1107
Philadelphia, PA 19102

Counsel for Petitioners

Anthony W. Norwood
Earle B. Wilson
Linda S. Wernery
Terri J. Scadron
John M. McAdams, Jr.
United States Department of Justice
Office of Immigration Litigation
Ben Franklin Station
P.O. Box 878
Washington, DC 20044

Counsel for Respondent

---

OPINION

---

COWEN, <u>Circuit Judge</u>.

---

*Honorable William W Schwarzer, Senior United States District
Judge for the Northern District of California, sitting by
designation.

Said Al-Fara ("Petitioner" or "Al-Fara") and Bahya Safi[1] petition for review of an order of the Board of Immigration Appeals ("BIA"), which summarily affirmed an Immigration Judge's ("IJ") decision to deny Al-Fara's applications for asylum and withholding of deportation under the Immigration and Nationality Act ("INA" or "Act"). Al-Fara challenges the propriety of the BIA's summary affirmance in his case. For the following reasons, we will deny the petition for review.

I.

A.

The IJ found Al-Fara to be credible regarding his subjective narrative. The facts below are accordingly taken largely from his testimony.

Petitioner was born on June 24, 1947, in Khan Younis, a town located in the area known as the Gaza Strip of what was then Palestine. During the War of 1967, Israeli forces occupied the Gaza Strip, and entered Petitioner's house by force. In response, Petitioner attacked one of the Israeli soldiers with a stick. Recalling a fearful memory from the 1956 Sinai War where he had witnessed Israeli soldiers lining up and shooting a group of Palestinian youths, Al-Fara fled as the Israeli soldiers shot at him. Petitioner believed that the Israeli soldiers had come to destroy his home, and that if he remained in Gaza they would arrest and kill him in retaliation for his attack on the Israeli soldier. He escaped to Jordan.

From 1967 through 1976, Israeli soldiers approached Petitioner's parents and other family members demanding his whereabouts. Specifically in 1976, Israeli soldiers forced Al-Fara's parents from their home and demolished it. As a result of

---

[1]Petitioner Bahya Safi is Al-Fara's wife and a derivative applicant on his applications for asylum and withholding of deportation. *See* 8 C.F.R. § 208.3(a) (2004). While our opinion refers to the primary applicant, it is understood to include the derivative applicant as well.

this ordeal, Al-Fara's mother became mentally ill and was admitted to a psychiatric hospital, where she passed away in 1991. Other relatives were killed by Israeli authorities. Petitioner's cousin, a judge in the Gaza Strip, was tortured and killed by Israeli authorities for refusing to impose unlawful judgments against Palestinian youths. According to Petitioner's testimony and an affidavit from the office of the Palestinian National Liberation Movement, Petitioner's cousin Essam Al-Fara was arrested during the Great Intifada in 1987 but managed to escape. Petitioner testified that Essam was tortured.

Petitioner remained in Jordan until October 1968, when Jordan agreed to issue travel documents to any Palestinian refugee willing to leave. He traveled to Kuwait, where he succeeded in receiving a sponsorship from a Kuwaiti citizen. His residence permit, however, expired in 1983 and the sponsor refused renewal. He next lived in Iraq until December 1985, but returned to Jordan to establish an importing business. Petitioner operated his business from July 1986 until December 1989. During this period he entered the United States on several occasions for business purposes. After his business in Jordan came to a close, Al-Fara traveled to Syria, Turkey, Greece, Bulgaria, Cyprus, and Yugoslavia. He spent five and one-half months in Egypt, where he married his present wife in 1990.

Petitioner testified that Israeli authorities will not permit him to return, and that the Palestinian Authority is powerless. As corroborated by a letter dated March 15, 1997, from the Palestinian National Liberation Movement, the Palestinian National Authority denied his application for reunification with his family in Gaza, because they were not processing applications at the time. He does not possess a Palestinian passport, but has a traveling document from Jordan. His wife, who was also born in Khan Younis but raised in Egypt, has a traveling document from Egypt. Although he may enter Jordan, his wife cannot, and he will be asked to surrender his passport to Jordan authorities. His children, who are all United States citizens, may only enter Jordan on tourist visas. Petitioner believes that neither he nor his wife will be accepted by any other country.

B.

Petitioners entered the United States on or about April 7, 1991, on a non-immigrant visitor's visa issued with authorization to remain until October 7, 1991. On June 28, 1996, the former Immigration and Naturalization Service ("INS")[2] issued an Order to Show Cause in which it charged Petitioners with remaining in the United States beyond the authorized period. On October 18, 1996, Petitioners admitted the allegations, and the IJ thus concluded that they are subject to deportation pursuant to section 241(a)(1)(B) of the INA. Seeking relief, Petitioners applied for asylum and withholding of deportation.

The IJ found Said Al-Fara to be credible but denied his application for asylum. After identifying Petitioner as a stateless Palestinian, the IJ observed that it was the conditions of unrest and battle brought about by the 1967 war, and not any individualized persecution of Petitioner, that prompted Petitioner's flight from Gaza in 1967. In addition, the IJ recognized that the 1967 war involved attacks and abuses by both Israelis and Palestinians. The IJ reasoned that harm resulting from such violence in a situation of civil strife is not necessarily persecution "on account of" a statutory factor, and thus Petitioner is not a "refugee" by virtue of past persecution. With respect to Petitioner's well-founded fear of future persecution claim, the IJ found that the substantial amount of time that passed between Petitioner's flight and the present renders his subjective fear of retaliation objectively unfounded. Addressing Petitioner's status as stateless, the IJ concluded that statelessness alone does not warrant a grant of asylum, and noted as an additional matter the lack of any evidence, other than Al-Fara's testimony, that the Palestinian Authority would deny him admission into the area it controls. In light of Petitioner's

---

[2]On March 1, 2003, the INS ceased to exist as an agency within the Department of Justice and its functions were transferred to the Department of Homeland Security. *See* Homeland Security Act of 2002, Pub.L. No. 107-296, 110 Stat. 2135 (2002).

5

inability to qualify for asylum, the IJ rejected his request for withholding of deportation, but granted the application for voluntary departure. On December 2, 2002, the BIA affirmed without opinion the IJ's decision pursuant to 8 C.F.R. § 1001.3(e)(4).[3]

## II.

Because Petitioners were placed in deportation proceedings before April 1, 1997, and the final order of deportation was issued by the BIA after October 30, 1996, our jurisdiction arises under 8 U.S.C. § 1105a (1996), as amended by the transitional rules for judicial review in section 309(c)(4) of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub. L. No. 104-208, 110 Stat. 3009-546 (Sept. 30, 1996). The BIA's jurisdiction arose under 8

---

[3]At the time the BIA acted on Al-Fara's appeal, the streamlining regulations were located at 8 C.F.R. § 3.1(a)(7) (2002). The language of the current streamlining regulation does not significantly differ from that of the former provision, and it is thus to the current regulation that we refer to and cite. 8 C.F.R. § 1003.1(e)(4) provides in pertinent part:

> (i) The Board member to whom a case is assigned shall affirm the decision of the Service or the immigration judge, without opinion, if the Board member determines that the result reached in the decision under review was correct; that any errors in the decision under review were harmless or nonmaterial; and that
> (A) The issues on appeal are squarely controlled by existing Board or federal court precedent and do not involve the application of precedent to a novel factual situation; or
> (B) The factual and legal issues raised on appeal are not so substantial that the case warrants the issuance of a written opinion in the case.

C.F.R. §§ 1003.1(b) and 1240.53 (2003).[4]

The IJ denied Al-Fara's applications for relief, but granted voluntary departure. The BIA affirmed without opinion, pursuant to 8 C.F.R. § 1003.1(e)(4).[5] "[W]hen the BIA issues an [affirmance without opinion] under the streamlining regulations, we review the IJ's opinion and scrutinize its reasoning." *Dia v. Ashcroft*, 353 F.3d 228, 245 (3d Cir. 2003) (en banc). Under the substantial evidence standard, we must uphold the IJ's factual findings if they are "supported by reasonable, substantial, and probative evidence on the record considered as a whole." *INS v. Elias-Zacarias*, 502 U.S. 478, 481 (1992). Findings of past and future persecution are factual determinations and are accordingly subject to this deferential review. *Lukwago v. Ashcroft*, 329 F.3d 157, 167 (3d Cir. 2003).

III.

Al-Fara asserts that the BIA erred in its decision to apply the streamlining regulations to his case because the criteria set forth in 8 C.F.R. § 1003.1(e)(4) were not met.[6] Specifically, he contends that (1) the IJ's decision is not correct; (2) the IJ failed to review critical evidence; (3) the BIA failed to address

---

[4]At the time the BIA acted on Al-Fara's appeal, these regulations were found at 8 C.F.R. §§ 3.1(b)(2) and 240.53 (2002).

[5]In his brief, Al-Fara argues that the BIA's affirmance-without-opinion procedures violate due process. This argument is foreclosed by our decision in *Dia v. Ashcroft*, 353 F.3d 228, 238-45 (3d Cir. 2003) (en banc).

[6]In *Smriko v. Ashcroft*, 387 F.3d 279 (3d Cir. 2004), this Court held that it has jurisdiction to review the BIA's decision to issue an affirmance-without-opinion in a particular case. We concluded that 8 C.F.R. § 1003.1 provides a "meaningful standard against which to judge the agency's exercise of discretion." *Id.* at 292 (internal quotation marks omitted). We will uphold the BIA's decision to streamline if we find that it was not arbitrary and capricious in light of the requirements of 8 C.F.R. § 1003.1(e)(4).

7

changed circumstances; and (4) new arguments were presented by Petitioner to the BIA. We conclude that the BIA's decision to streamline was not arbitrary and capricious.

A.

Substantial evidence supports the IJ's determination that Petitioner does not qualify for asylum. Pursuant to 8 U.S.C. § 1158(b)(1), the Attorney General may grant asylum to an otherwise removable alien who demonstrates that he or she meets the definition of "refugee" as defined by 8 U.S.C. § 1101(a)(42)(A):

> [A]ny person who is outside any country of such person's nationality or, in the case of a person having no nationality, is outside any country in which such person last habitually resided, and who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion.

Petitioner mounts four specific challenges to the merits of the IJ's decision: (1) the IJ's finding that Petitioner does not qualify as a "refugee" as defined by 8 U.S.C. § 1101(a)(42)(A) by virtue of past persecution is not supported by substantial evidence; (2) the IJ's finding that Petitioner does not qualify as a "refugee" by virtue of a well-founded fear of future persecution on account of membership in a particular social group is not supported by substantial evidence; (3) the IJ's denial of asylum is incorrect because Petitioner qualifies for a discretionary grant of asylum based on humanitarian grounds; and (4) the IJ's denial of asylum is incorrect because Petitioner's status as a stateless Palestinian renders him eligible for asylum.

Turning first to Petitioner's claim of past persecution, "[t]o establish eligibility for asylum on the basis of past persecution, an applicant must show (1) an incident, or incidents,

8

that rise to the level of persecution; (2) that is 'on account of' one of the statutorily-protected grounds; and (3) is committed by the government or forces the government is either 'unable or unwilling' to control." *Abdulrahman v. Ashcroft*, 330 F.3d 587, 592 (3d Cir. 2003) (internal citation and quotation marks omitted).

Substantial evidence supports the IJ's determination that the incident that occurred between Petitioner and the Israeli soldier in 1967 along with the ensuing encounters between the Israeli forces and Petitioner's family do not rise to the level of "persecution" as contemplated by the Act. Persecution is not a limitless concept. While it includes "threats to life, confinement, torture, and economic restrictions so severe that they constitute a threat to life or freedom," we have explained that it "does not encompass all treatment that our society regards as unfair, unjust, or even unlawful or unconstitutional. If persecution were defined that expansively, a significant percentage of the world's population would qualify for asylum in this country-- and it seems most unlikely that Congress intended such a result." *Fatin v. INS*, 12 F.3d 1233, 1240 (3d Cir. 1993). Persecution must be "extreme conduct" to qualify for asylum protection. *Id.* at 1240 n.10. In this case, Israeli soldiers entered Petitioner's home by force. Petitioner responded by attacking an Israeli soldier with a stick and fleeing the country. The Israeli forces continued to harass Petitioner's family and demand his whereabouts until 1976, when they expelled Petitioner's parents from their home and demolished the house. Neither Petitioner nor his parents were arrested, detained, abused, or physically harmed as a result of this incident. In addition, the context in which these encounters occurred is extremely significant. At the time of this event in 1967, war had broken out between Israel and what was then Palestine. The record reflects that the threat of injury or harm in Gaza affected the entire population in that region and was a function of the Israeli takeover, occupation, and claim to the lands of Gaza and the West Bank. According to Petitioner's affidavit, his parents' house was among thousands destroyed in 1976 pursuant to an Israeli policy designed to force families to leave and make room for Jewish settlements.

9

Petitioner's burden in showing persecution is high, and we have held that "'generally harsh conditions shared by many other persons' do not amount to persecution." *Fatin*, 12 F.3d at 1240 (quoting *Matter of Acosta,* 19 I. & N. Dec. 211, 222 (BIA 1985)); *see Ambartsoumian v. Ashcroft*, 388 F.3d 85, 93 (3d Cir. 2004); *Matter of Sanchez and Escobar*, 19 I. & N. Dec. 276, 284 (BIA 1985), *aff'd sub nom Sanchez-Trujillo v. INS*, 801 F.2d 1571 (9th Cir. 1986). While troubling, Petitioner's allegations do not arise to the level of persecution required by *Fatin*. Indeed, the IJ noted that Congress had specifically rejected a definition of "refugee" that would have encompassed "displaced persons," i.e., "individuals who flee widespread conditions of indiscriminative violence resulting from civil war or military strife in a country." *Sanchez and Escobar*, 19 I. & N. Dec. at 284. Furthermore, as the IJ properly noted, harm resulting from country-wide civil strife is not persecution "on account of" an enumerated statutory factor. *See Matter of Maldonado-Cruz*, 19 I. & N. Dec. 509, 513 (BIA 1988), *rev'd on other grounds*, 883 F.2d 788 (9th Cir. 1989); *Sanchez and Escobar*, 19 I. & N. Dec. at 282. Petitioner has furnished no evidence, short of speculation, that these past incidents were perpetrated on account of anything other than ongoing civil controversy. This record does not compel a finding that Petitioner suffered past persecution.

This finding extinguishes Al-Fara's claim that the IJ erroneously failed to grant him a discretionary grant of asylum for humanitarian reasons. In *Matter of Chen*, 20 I. & N. Dec. 16 (BIA 1989), the Board acknowledged that in limited circumstances past persecution alone may warrant a grant of asylum, even in the absence of a future threat of persecution. The Board stated:

> If an alien establishes that he has been persecuted in the past for one of the five reasons listed in the statute, he is eligible for a grant of asylum. The likelihood of present or future persecution then becomes relevant as to the exercise of discretion, and asylum may be denied as a matter of discretion if there is a little likelihood of present

10

persecution. . . .

> However, there may be cases where the favorable exercise of discretion is warranted for humanitarian reasons even if there is little likelihood of future persecution. . . .

> "It is frequently recognized that a person who--or whose family--has suffered under atrocious forms of persecution should not be expected to repatriate. . . . Thus, while the likelihood of future persecution is a factor to consider in exercising discretion in cases where any asylum application is based on past persecution, asylum may in some situations be granted where there is little threat of future persecution."

*Id.* at 18-19 (quoting the Handbook on Procedures and Criteria for Determining Refugee Status under the 1951 Convention and the 1967 Protocol Relating to the Status of Refugees (Geneva, 1979)).

In this case, however, we affirm the IJ's finding that Petitioner did not suffer past persecution. Therefore, he is not eligible for a grant of asylum pursuant to this rationale.

In the absence of past persecution, an applicant for asylum can establish that he or she has a well-founded fear of persecution. *Gao v. Aschroft*, 299 F.3d 266, 272 (3d Cir. 2002). Demonstration of a well-founded fear of persecution carries both a subjective and objective component. The applicant must show "a subjective fear of persecution that is supported by objective evidence that persecution is a reasonable possibility." *Chang v. INS*, 119 F.3d 1055, 1066 (3d Cir. 1997). Testimony alone may be sufficient to satisfy this burden, so long as it is found credible. *Gao*, 299 F.3d at 272.

Taken in conjunction with the documentary evidence of conditions in Israel and the occupied territories, Al-Fara's testimony, while credible, does not establish that a reasonable person in his circumstances would fear persecution on account of social group or nationality.

11

To qualify for asylum on account of membership in a "particular social group" requires that an applicant (1) identify a group that constitutes a "particular social group," (2) establish that he or she is a member of that group, and (3) show persecution or a well-founded fear of persecution based on that membership. *Lukwago v. Ashcroft*, 329 F.3d 157, 170 (3d Cir. 2003). Petitioner argues that the IJ erred in failing to find that he has a well-founded fear of persecution based on membership in the social group of his family. It is not clear whether this argument was raised before the IJ, but any error he may have committed in failing to entertain or address it is harmless in light of the failure of the record to substantiate it. While violence against a family member may "support . . . a claim of persecution and in some instances is sufficient to establish [a well-founded fear of] persecution," *Baballah v. Ashcroft*, 335 F.3d 981, 988 (9th Cir. 2003), Petitioner has not sufficiently established that his family members suffered persecution *because* of their familial relationship. The record reflects that one of Petitioner's cousins was arrested and tortured in the Intifada in 1987, and that another cousin who served as a judge in Gaza was killed because he refused to unlawfully apply laws to the Palestinians before him. According to Petitioner, his parents' house was among the thousands destroyed in 1976 pursuant to an Israeli policy aimed at emptying Gaza to make room for Jewish settlements.

Substantial evidence supports the IJ's finding that Petitioner's fear of retaliation from Israeli forces as a result of his attack on an Israeli soldier in 1967 is not objectively reasonable. Putting aside that such fear is not "on account of" an acceptable statutory factor, *see Maldonado-Cruz*, 19 I. & N. Dec. at 512 ("[A]liens fearing retribution over purely personal matters or those fleeing general conditions of violence and upheaval in their native countries would not qualify for asylum. Such persons may have well-founded fears of harm but such harm would not be on account of [any statutory factor]."), this fear is objectively unreasonable given that approximately thirty-eight years have passed since the incident, and approximately thirty years have passed since the Israelis last inquired of Petitioner's whereabouts. Petitioner has put forth no evidence

12

that the Israeli authorities possess a present interest in him.

Al-Fara's contention that he possesses a well-founded fear of persecution based on his nationality as a Palestinian is also unpersuasive. This claim is exclusively premised on the harsh conditions confronted by those who reside in Gaza. Although an individual who resides in a country where the lives and freedoms of a significant number of persons of a protected group are targeted for persecution may make less of the individual showing required to qualify for asylum, the applicant must do more than rely on a general threat of danger arising from a state of civil strife; *some* specific showing is required. A Palestinian who has suffered isolated harm, or little cumulative harm, cannot prevail merely because many Palestinians face oppressive conditions.

We certainly cannot say that "a reasonable factfinder would have to conclude," based on the record, that the Petitioner, if returned to Gaza, would face treatment amounting to "persecution" simply because he is a Palestinian. The general political upheaval that has been an unfortunate reality in Gaza is obviously threatening for those who live there, but such conditions in and of themselves do not merit asylum.

Related to this latter claim is Petitioner's contention that the IJ committed reversible error in failing to consider critical evidence regarding the conditions experienced by Palestinians in Israel and the occupied territories. In support of this charge, Petitioner refers to a portion of the IJ's oral statement: "Because as I have explained, the fundamental problem in this case is we have too much background evidence about conditions of Palestinians in occupied territories, but very little from this respondent about what exactly happened to him. And, he has to have both." (R. at 429.) Petitioner asserts that this statement proves that the IJ did not consider all of the background evidence submitted in the case. This claim is without merit and directly belied by the IJ's other statements and written opinion, which discusses the general conditions of the areas controlled by the Palestinian Authority, citing to specific evidence submitted by both Petitioner and the INS. Significantly, Al-Fara does not

13

point to any specific evidence that he contends the IJ ignored.

Petitioner's fear derives not from his nationality or membership in a social group, but from the general instability of the region. Accordingly, substantial evidence supports the IJ's conclusion that Petitioner does not possess a well-founded fear of persecution as defined by the Act.

Petitioner's challenge to the IJ's failure to grant asylum on the basis of statelessness is without merit. Courts have repeatedly held that "statelessness alone does not warrant asylum." *See, e.g., Ahmed v. Ashcroft*, 341 F.3d 214, 218 (3d Cir. 2003).

## B.

Petitioner's argument that streamlining is inappropriate when new arguments are pressed on appeal to the BIA is correct only if the BIA acted arbitrarily in concluding that either "[t]he issues on appeal are squarely controlled by existing Board or federal court precedent and do not involve the application of precedent to a novel factual situation" or "[t]he factual and legal issues raised on appeal are not so substantial that the case warrants the issuance of a written opinion in the case." 8 C.F.R. § 1003.1(e)(4). As explained below, the BIA did not act arbitrarily in applying these standards and streamlining Al-Fara's case.

We have discussed above Al-Fara's contentions, raised on direct appeal to the BIA, that he qualifies for asylum based on humanitarian grounds and that the IJ erroneously failed to review critical evidence of country conditions. In addition to these points, his brief submitted to the BIA on appeal argued that he qualifies as a refugee pursuant to the 1951 Convention Relating to the Status of Refugees ("1951 Convention"). On appeal to this Court, Petitioner argues that he qualifies as a refugee pursuant to the legal opinion of the INS General Counsel's Office, Genco Op. No. 95-14, 1995 WL 1796321 (INS Oct. 27, 1995).

14

Petitioner's claim that he qualifies as a refugee pursuant to the 1951 Convention and the 2002 interpretations of the United Nations High Commissioner for Refugees made thereto is without merit. The United States is a signatory to the 1967 United Nations Protocol Relating to the Status of Refugees ("1967 Protocol"), which incorporated the 1951 Convention. The Attorney General implemented regulations to comply with its terms. *INS v. Stevic*, 467 U.S. 407, 428-30, n.22 (1984). In 1980, Congress amended the INA through passing the Refugee Act, which brought the domestic laws of the United States into conformity with its treaty obligations under the 1967 Protocol. *Id.* at 421, 427. The 1967 Protocol is not self-executing, nor does it confer any rights beyond those granted by implementing domestic legislation. *See id.* at 428 n.22; *Cuban American Bar Ass'n, Inc. v. Christopher*, 43 F.3d 1412, 1426 n.13 (11th Cir.), *cert. denied sub nom.*, *Haitian Refugee Center, Inc. v. Christopher*, 515 U.S. 1142 (1995); *Ming v. Marks*, 505 F.2d 1170, 1171 n.1 (2d Cir. 1974) (per curiam), *cert. denied*, 421 U.S. 911 (1975) (clarifying that 1967 Protocol does not alter or enlarge the effect of existing immigration laws already embracing its principles). Accordingly, Petitioner cannot assert rights beyond those contained in the INA and its amendments.

Petitioner's claim that he qualifies as a refugee pursuant to the legal opinion of the INS General Counsel's Office, Genco Op. No. 95-14, 1995 WL 1796321 (INS Oct. 27, 1995), was not raised before the IJ or on direct appeal to the BIA. Under 8 U.S.C. § 1105a(c) (repealed), which applies to transitional aliens through incorporation, *see* IIRIRA § 309(c), there shall be no judicial review of a claim "if the alien has not exhausted the administrative remedies available to him as of right under the immigration laws and regulations." 8 U.S.C. § 1105a(c). Because Al-Fara did not advance this particular claim in his asylum hearing before the IJ or on appeal to the BIA, he has not exhausted his available administrative remedies. Consequently, we do not have jurisdiction to entertain it.[7]

---

[7]We note, however, that had we jurisdiction to review this claim, we would deny it. Petitioner's claim that Jordan, the country

We recognize that pursuant to our recent decision in *Smriko v. Ashcroft*, 387 F.3d 279 (3d Cir. 2004), we have jurisdiction to remand this case to the BIA for a written disposition. Unlike the situation presented in *Smriko*, however, this is not a case where the BIA's institutional knowledge and expertise would be of value to us.

C.

Al-Fara rightly asserts that conditions in Israel and the occupied territories have changed since 1998. He has submitted a number of articles and reports documenting these changes. Nonetheless, it is axiomatic that we may not foray outside the administrative record in considering this appeal. Indeed, the "general rule, applicable across the board to judicial review of administrative action and merely codified for immigration appeals in section 1105a(a)(4) [(repealed)][8], is that the court may not go outside the administrative record." *Osaghae v. INS*, 942 F.2d 1160, 1162 (7th Cir. 1991). The appropriate recourse, already taken by Petitioner, is to file a motion to reopen with the BIA on account of new evidence. If the BIA denies Petitioner's motion to reopen, he may appeal that decision to this Court.

For the foregoing reasons, the petition for review will be denied.

---

he deems his "last habitual residence" would deny him reentry is purely speculative, contradicts his administrative hearing testimony, and is not linked to an allegation of persecution on account of any protected ground, as required by the opinion on which he relies.

[8]The IIRIRA repealed this old rule, but it is still applicable to transitional aliens through incorporation. *See* IIRIRA §§ 309(c)(1) and (4).

16