

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-7-2006

# Barrie v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-1486

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"Barrie v. Atty Gen USA" (2006). *2006 Decisions*. Paper 1476.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/1476

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 05-1486
_____

ALPHA BARRIE,

Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,

Respondent
_____

On Petition for Review from an
Order of the Board of Immigration Appeals
(Board No. A77-550-703)
Immigration Judge Miriam K. Mills
_____

Submitted Under Third Circuit LAR 34.1(a)
February 13, 2006

Before:  SCIRICA, *Chief Judge*, BARRY and FISHER, *Circuit Judges*.

(Filed: March 7, 2006)
_____

OPINION OF THE COURT
_____

FISHER, *Circuit Judge*.

Alpha Barrie, a native and citizen of Sierra Leone, petitions this Court for review of an order of the Board of Immigration Appeals ("BIA") denying his application for asylum, withholding of removal, and protection under the United Nations Convention Against Torture ("CAT").[1]  Barrie asserts that he presented sufficient evidence that he was subject to persecution in Sierra Leone on account of his political beliefs and that he will be tortured if forced to return.  After reviewing the submissions of the parties and the administrative record, we conclude that the BIA's factual findings were supported by substantial evidence and will accordingly deny the petition for review.

I.

As we write solely for the parties, and the facts are known to them, we will discuss only those facts pertinent to our conclusion.  Barrie is a farmer who lived with his family in a village in Sierra Leone, a country that experienced civil war and political unrest for an eleven-year period between 1991 and January 2002.  On June 23, 1997, Revolutionary United Front ("RUF") rebel insurgents[2] entered Barrie's village wielding weapons.  Over the course of two days, villagers were beaten, denied food, forced to sit outside and stare

---

[1]Convention against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment ("CAT"), art. 3, *opened for signature* Dec. 10, 1984, S. TREATY DOC. NO. 100-20, 1465 U.N.T.S. 85 (entered into force June 26, 1987).

[2]Although in his Application for Asylum and Withholding of Removal Barrie stated that his village was attacked by "the rebels," Barrie testified at his hearing that he was unsure of the affiliation of the insurgents who had entered his village and that he did not know whom they were fighting against.

2

at the sun during the day, and tied up in a locked room at night.  Barrie saw the rebels kill some villagers and cut off the ears of others.  Barrie's wife informed him that the rebels were "raping women," and she later told Barrie that she had been raped, as well.[3]  In addition, Barrie asserted that two of his cousins had been killed by the rebels, although he acknowledged that he had no personal knowledge of what happened to his cousins and that he had not even seen his own family since February 1999.[4]  At the end of the ordeal, the rebels warned the villagers to leave the village because the villagers were "not on their side," and they informed the villagers that they were going to burn the village to the ground.

Barrie asserts that he was at one time a member of the Sierra Leone People's Party ("SLPP"), and that he was targeted by the rebels in June 1997 because he supported the elected government.  Although Barrie testified that he would be killed by the rebels if he was forced to return to Sierra Leone, Barrie conceded that he based his opinion on the atrocities committed by the rebels back in June 1997.  He further told the court that he had heard through news accounts and from other residents of Sierra Leone that "[t]he rebels are killing people, the people of the country."

Barrie and the other villagers fled to a refugee camp in Guinea.  After remaining in the camp for a year and a half, Barrie left the camp for Guinea's capital city, Conakry.

___

[3]Barrie stated in his application that "[m]y wife told me that they were raping the women."  At his hearing, however, he testified that "my wife told me that she was raped."

[4]Barrie last inquired of his family's whereabouts sometime in the year 2000.

3

From there, Barrie stowed away on a ship bound for the United States, and he arrived in Baltimore, Maryland, on May 20, 1999.

Barrie filed an initial application for asylum and withholding of removal on July 2, 1999, and a second application on April 4, 2000. The Immigration Judge ("IJ") held a hearing on September 30, 2003, and rendered an oral decision that same day denying Barrie's application. Although the IJ determined that Barrie was credible, she concluded that Barrie's sole confrontation with RUF rebels, in June 1997, arose out of general civil strife rather than persecution. According to the IJ, Barrie "was a member of the civilian population targeted by rebel forces who had been trying to topple the legitimate government for a long period of time." In addition, even assuming that Barrie suffered past persecution, the IJ concluded that Barrie would not be entitled to asylum or withholding of removal because of improved country conditions in Sierra Leone which resulted in a cease fire that has been in effect since January 2002. A State Department Country Report on Sierra Leone, dated March 31, 2003, which was introduced at the hearing and relied upon by the IJ, explained that the country recently enjoyed peaceful parliamentary elections, in which the SLPP won a large majority of seats in the parliament. The Country Report further stated that the RUF "completed disarmament and demobilization," and that the "Government has since asserted control over the whole country, backed by a large peacekeeping force."

On January 18, 2005, the BIA affirmed without opinion the IJ's decision. Barrie filed a timely petition for review with this Court on February 15, 2005.

## II.

We have jurisdiction over a final order of the BIA pursuant to 8 U.S.C. § 1252(a)(1), (b)(2). Because the BIA affirmed and adopted the decision of the IJ, we must necessarily review the decision of the IJ. *Abdulai v. Ashcroft*, 239 F.3d 542, 549 n.2 (3d Cir. 2001) ("When the BIA defers to an IJ, a reviewing court must, as a matter of logic, review the IJ's decision to assess whether the BIA's decision to defer was appropriate.").

We review the IJ's findings that Barrie was not subject to persecution or torture upon removal under the deferential substantial evidence standard. *Abdille v. Ashcroft*, 242 F.3d 477, 483-84 (3d Cir. 2001). Our task under this standard is to treat the IJ's factual findings as "conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B). A finding is supported by substantial evidence "if a reasonable fact finder could make a particular finding on the administrative record." *Dia v. Ashcroft*, 353 F.3d 228, 249 (3d Cir. 2003) (en banc). In other words, the IJ's factual findings must be upheld "unless the evidence not only supports a contrary conclusion, but compels it." *Abdille*, 242 F.3d at 483.

5

III.

Barrie must demonstrate either that he was persecuted or that he has a well-founded fear of future persecution to support his asylum and withholding of removal

claims. 8 U.S.C. §§ 1101(a)(42)(A), 1158(b)(1).[5] The Attorney General has discretion to grant asylum to an alien determined to be a "refugee" under the Immigration and Nationality Act ("INA"). 8 U.S.C. § 1158(b)(1). The term "refugee" is a statutory term of art, defined in part under the INA as:

> [A]ny person who is outside any country of such person's nationality . . ., is outside any country in which such person last habitually resided, and who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a protected social group, or political opinion[.]

*Id.* § 1101(42)(A) (emphasis added). In order to establish past or future persecution,[6] the applicant must "show past or potential harm rising to the level of persecution on account of a statutorily enumerated ground that is committed by the government or by forces the

---

[5]In contrast to asylum, which permits an otherwise deportable alien to remain in the United States, a withholding of removal grants the alien the right not to be deported to a particular country. *Abdulai*, 239 F.3d at 545. The Attorney General is required to withhold removal to a particular country if there is a determination "that the alien's life or freedom would be threatened in that country because of the alien's race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3). We have noted that the "eligibility threshold for withholding of removal is even higher" than for an asylum claim because the applicant must demonstrate a "clear probability of persecution." *Guo v. Ashcroft*, 386 F.3d 556, 561 n.4 (quoting *Senathirajah v. I.N.S.*, 157 F.3d 210, 215 (3d Cir. 1998)). Because of this higher standard, if an alien cannot meet the burden as to the asylum claim, the withholding of removal claim necessarily fails as well. *He Chun Chen v. Ashcroft*, 376 F.3d 215, 223 (3d Cir. 2004).

[6]We have accepted the BIA's definition of the term "persecution" to include "threats to life, confinement, torture, and economic restrictions so severe that they constitute a threat to life or freedom." *Fatin v. INS*, 12 F.3d 1233, 1240 (3d Cir. 1993).

7

government is unable or unwilling to control." *Fiadjoe v. Attorney General*, 411 F.3d 135, 160 (3d Cir. 2005). A finding of past persecution gives rise to a rebuttable presumption of future persecution. 8 C.F.R. § 1208.13(b)(1).

Here, Barrie asserts that he was persecuted by RUF forces in June 1997 based upon his support for the SLPP. Although the IJ found Barrie credible, she concluded that he failed to submit sufficient evidence that he was persecuted on account of his political opinions. We agree with the IJ's conclusion. In order to establish an asylum claim on the basis of political persecution, the applicant must demonstrate a causal link between his political opinions and the harm he suffered. *I.N.S. v. Elias-Zacarias*, 502 U.S. 478 (1992). In other words, Barrie must show that he was targeted because of his political beliefs. *Id.* at 481 n.1, 483. This burden requires Barrie to point to some evidence, direct or circumstantial, that Barrie's political beliefs motivated the RUF to carry out the attack on the village. *Id.* at 483. At this stage of the proceedings, that evidence must compel us to conclude that no reasonable factfinder could fail to find that Barrie was targeted because of his political beliefs. *Id.* at 483-84.

In this case, the evidence presented at the hearing supports the IJ's conclusion that the rebels indiscriminately targeted the entire village. Barrie testified that the rebels came to the village and held him captive along with other villagers for two days and one night. The rebels threatened to burn down the entire village, and, according to Barrie, "[t]hey sort of kicked us out of the city." The rebels committed atrocities, but there is no evidence compelling us to conclude that such atrocities were committed because Barrie –

8

or the village as a whole – supported the SLPP. Barrie testified that he did not hold any leadership position in the organization, and the record does not compel us to conclude, based upon the harm that befell the entire village, that Barrie himself was targeted for persecution.

Our recent decision in *Al-Fara v. Gonzales*, 404 F.3d 733 (3d Cir. 2005), sheds some light on our rationale. In *Al-Fara*, Israeli forces occupying the Gaza Strip forcibly entered Al-Fara's house during the midst of the 1967 war. Al-Fara was forced to flee after he was shot at by Israeli soldiers for attacking one of the soldiers with a stick. He fled initially to Jordan, then to various European and Middle Eastern nations, until he finally arrived in the United States. From 1967 to 1976, Israeli soldiers occasionally approached Al-Fara's family members to inquire of his whereabouts, and Israeli forces demolished his family's home in 1976. *Id.* at 736. Although the IJ found Al Fara's story to be credible, he denied Al-Fara's application for asylum because he concluded that Al-Fara's flight was prompted by general conditions of unrest during the 1967 war rather than individualized persecution. We concluded that substantial evidence supported the IJ's conclusion that Al-Fara was not individually targeted for persecution. We explained that it was important to consider that Al-Fara's encounter occurred during a war in which the entire population of the region was threatened with harm. *Id.* at 739. In addition, we noted that "'generally harsh conditions shared by many other persons[] do not amount to persecution.'" *Id.* at 740 (quoting *Fatin*, 12 F.3d at 1240). Thus, we concluded that Al-

9

Fara "furnished no evidence, short of speculation, that these past incidents were perpetrated on account of anything other than ongoing civil controversy." *Id.*

Similarly, Barrie has not pointed to any evidence in this case, short of his own speculation, that his village was targeted based on its political beliefs, or that he himself was targeted based on his political beliefs. The record reveals that the entire village was targeted by the rebels, and there is no evidence in the record regarding the political beliefs held by the other villagers who were targeted.

Sierra Leone was a horrific place to live in June 1997 due to the burgeoning civil war, and the record documents the numerous atrocities that occurred across the entire nation throughout the conflict. The evidence in the record does not compel us to conclude, however, that Barrie was targeted for individual persecution in the midst of the indiscriminate bloodshed.

We also conclude that there is substantial evidence to uphold the IJ's decision that Barrie did not establish a well-founded fear of future persecution. Barrie's stated fear of future persecution is based solely on his belief that he will be killed by the rebels on account of his political opinion if he returns to his village. That fear, however, is objectively unreasonable for two reasons. First, we have concluded that there is insufficient evidence that the original encounter occurred "on account of" his political opinion. Second, conditions have improved in Sierra Leone in the intervening time period since the civil war has ended, and there is no indication from the record that RUF rebels have the present intent to harm Barrie upon his return. *See Al-Fara*, 404 F.3d at

10

741.  As a result, we conclude that the IJ's determination that Barrie was not persecuted or subject to future persecution is supported by substantial evidence, and we will deny Barrie's petition for review on his asylum and withholding of removal claims.[7]

Finally, we also agree with the IJ that Barrie did not demonstrate that he would be subject to torture if removed to Sierra Leone, as is necessary to support his claim under the CAT.  8 C.F.R. §§ 208.16(c)(2), 208.18(a).  In *Tarrawally v. Ashcroft*, 338 F.3d 180, 188 (3d Cir. 2005), a decision involving an immigrant from Sierra Leone asserting that he would be tortured by the RUF if forced to return to his country, we explained that current country conditions may be dispositive in determining relief under the CAT.  We concluded in that decision that Tarrawally's CAT claim failed because the RUF was not in power, and that he could not establish that any torture at the hands of the RUF would be employed with the acquiescence of the current government.  *Id.*

In this case, the State Department Country Report introduced at Barrie's hearing stated that the RUF has disarmed and demobilized, that the SLPP-led government has asserted control over the entire country with the backing of an international peacekeeping force, and that peaceful parliamentary elections have taken place.  Based upon this evidence in the record, we are not compelled to conclude that Barrie will be tortured upon

---

[7]Our finding that Barrie was not subject to past persecution extinguishes his claim that the IJ erred in failing to grant him a discretionary grant of asylum for humanitarian reasons.  *See Al-Fara*, 404 F.3d at 740.

his return to Sierra Leone, and we will deny Barrie's petition for review on his CAT claim.

IV.

For the reasons set forth above, Barrie's application for asylum, withholding of removal, and protection under the CAT was properly denied based upon his failure to establish a reasonable threat of persecution or torture. Accordingly, we will deny his petition for review.