

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

11-5-2008

# Mironova v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 07-2704

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"Mironova v. Atty Gen USA" (2008). *2008 Decisions.* Paper 262.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/262

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 07-2704
_____

LUDMILA MIRONOVA,
Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES
_____

Petition for Review of Order of the
United States Department of Justice
Board of Immigration Appeals
(BIA No. A95-163-973)
Immigration Judge:  Honorable Henry S. Dogin
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
October 30, 2008

Before: RENDELL, GREENBERG and VAN ANTWERPEN, <u>Circuit</u> <u>Judges</u>

(Filed:  November 5, 2008)
_____

OPINION OF THE COURT
_____

PER CURIAM

The petitioner, a citizen of the Republic of Georgia, seek review of a final order of

the Board of Immigration Appeals ("BIA").  For the following reasons, we will deny the

petition for review.

I.

The petitioner entered the United States in 1999. She was served with a notice to appear in 2002 charging her with being removable under INA § 237(a)(1)(B). While she conceded that she was removable as charged, Mironova filed an application for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT").[1] She claimed that she had been persecuted in the Republic of Georgia because she is ethnic-Russian.

At Mironova's 2005 removal hearing, she testified about several anti-Russian incidents suffered by her and her family. First, her son was severely beaten by Georgian nationalists in June 1993, and Mironova's attempt to report the incident to police was rebuffed with anti-Russian epithets. Second, Mironova was beaten by a neighbor in September 1996. Her daughter, who witnessed the altercation, reported the incident to the police, and Mironova's female neighbor was charged, convicted, and sentenced to two years' probation. Mironova, however, maintains that it was her neighbor's husband—a retired police officer—who attacked her, and that the government acquiesced in the beating because he was not charged or tried. She also testified that she received threatening letters and phone calls during the course of the criminal trial. Mironova

_____

[1] United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, Dec. 10, 1984, 1465 U.N.T.S. 85, implemented in the United States by the Foreign Affairs Reform and Restructuring Act of 1998, 8 U.S.C. § 1231.

2

asserted that she was discriminated against in the workplace in the 1980s and 1990s due to anti-Russian animus. Finally, she testified that in 2000—after she had left Georgia—one of her daughters, who had remained behind, was attacked because of her ethnicity.

The Immigration Judge ("IJ") denied all relief except for voluntary departure, and found Mironova to be only partially credible. The BIA did not uphold the adverse credibility finding but agreed that Mironova did not meet her burden of proof for asylum or related relief. The BIA determined that the job discrimination and telephone threats did not rise to the level of persecution. It then concluded that the remaining incidents did not qualify as persecution. Observing that Mironova was not targeted when her son was assaulted in 1993, the BIA found important that three years passed without another significant incident, and that six years passed before Mironova left Georgia. The BIA also rejected Mironova's theory that the 1996 assault was perpetrated by forces the government was unable or unwilling to control.

The BIA then found that Mironova did not establish a well-founded fear of future persecution because she did not establish that she would be targeted or that a pattern or practice of persecution existed against ethnic-Russians. The BIA believed that the record did not demonstrate that in 2000 Mironova's daughter was attacked due to her ethnicity, and noted that the claim of future persecution was undercut by Mironova's other daughter's ability to live peacefully in Georgia.

II.

We have jurisdiction to review a final order of removal under 8 U.S.C. §

1252(a)(1). Under the circumstances of this case, we review only the BIA's opinion. See

Abdulai v. Ashcroft, 239 F.3d 542, 548-49 (3d Cir. 2001). We will uphold its findings to

the extent they are "supported by reasonable, substantial and probative evidence on the

record considered as a whole." Kayembe v. Ashcroft, 334 F.3d 231, 234 (3d Cir. 2003).

We will deny Mironova's petition for review.

Mironova argues that the BIA erred by not considering the incidents complained of

in the aggregate to determine if they rose to the level of persecution. See Toure v. Att'y

Gen., 443 F.3d 310, 318 (3d Cir. 2006) (stating that "we do not consider [an incident] *in

vacuo*; we weigh it in conjunction with the prior incidents"). Mironova, however,

misreads the BIA's opinion. While the BIA concluded that the threats and job

discrimination did not amount to persecution, it determined that the other incidents did

not qualify as persecution for other reasons. The BIA held that the 1993 beating of

Mironova's son did not constitute persecution of Mironova because she was not the target

of the attack and because Mironova remained in Georgia until 1999.[2] Additionally, the

BIA found that the 1996 beating of Mironova was not persecution because it was not

---

[2]    Violence directed at an applicant's family members may "support a claim of
persecution and in some instances is sufficient to establish persecution." Al-Fara v.
Gonzales, 404 F.3d 733, 741 (3d Cir. 2005) (citing Baballah v. Ashcroft, 335 F.3d 981,
988 (9th Cir. 2003)). However, the facts here do not meet the threshold for such relief.

4

committed by the government or forces the government was unable or unwilling to control—not because it did not rise to the level of persecution.

Mironova also asserts that the BIA mistakenly concluded that the 1996 attack was not persecution. The crux of her argument is that because the BIA assumed that she was credible, it had to accept her theory that the government acquiesced in the assault. However, even though the BIA assumed Mironova to be generally credible, it was not precluded from determining that the record demonstrated that the government did not acquiesce in the attack, as long as that conclusion was supported by the record. And as the BIA correctly explained, the record did not support—and Mironova did not demonstrate through her testimony—that she was persecuted due to a corrupt judiciary. The 2004 U.S. State Department report states that the judiciary is not wholly independent (A.R. 408); however, the record (which included the Georgian trial transcript and verdict sheet) did not indicate any improprieties in the handling of Mironova's case. The police investigated the case and arrested Mironova's female neighbor. A trial was held at which Mironova and others testified, and her neighbor was convicted and sentenced to two years of probation. (A.R. 360-61.) The court did not accept Mironova's testimony that her male neighbor attacked her because "this fact was not mentioned during the preliminary investigation" by the witnesses. During the preliminary and legal investigation is proven that the victim–L. Mironova got the damage on her face with an iron bucket, used by [her female neighbor." (A.R. 360.) Thus, as the BIA concluded, the record does not support

5

Mironova's theory that the government acquiesced in the assault.

The BIA also correctly determined that Mironova did not establish a well-founded fear of future persecution. The record does not compel a conclusion contrary to the BIA's determination that it was unclear whether the 2000 attack on Mironova's daughter was on account of her ethnicity. See Abdille v. Ashcroft, 242 F.3d 477, 483-84 (3d Cir. 2001) (explaining substantial evidence standard). Additionally, the record does not support a finding that there was a pattern or practice of persecution against ethnic-Russians in Georgia. The 2004 U.S. State Department report does not indicate that ethnic-Russians are persecuted, and it noted that the government "generally respected the rights of ethnic minorities." (A.R. 419.) [3]

For these reasons, we will deny the petition for review.[4]

---

[3] Our review is confined to the evidence in the record, and thus we consider the country conditions as they existed at the time of the removal proceedings. Nevertheless, while we express no opinion as to the current treatment of ethnic-Russians in Georgia, we note our awareness of the recent conflict in Georgia. See U.S. Department of State, GEORGIA: COUNTRY SPECIFIC INFORMATION: http://travel.state.gov/travel/cis_pa-tw/cis_1122.html.

[4] Additionally, Mironova's failure to demonstrate past persecution or a well-founded fear of future persecution, necessary for a grant of asylum, necessarily precluded success on her request for withholding of removal. See Zubeda v. Ashcroft, 333 F.3d 463, 469-70 (3d Cir. 2003). And because Mironova did not challenge the denial of her claim for CAT relief, she was waived that claim. See U.S. v. Pelullo, 399 F.3d 197, 222 (3d Cir. 2005).

6