**IMG-057**                                                         **NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-1713
_____

WAGDY ZARIF IBRAHIM,
a/k/a Magdy Ibrahim,
a/k/a Ibraham Wadgyu,
                                        Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES
_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A045-067-329)
Immigration Judge:  Honorable Susan Roy
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
March 10, 2011
Before:  MCKEE, Chief Judge, SMITH AND GARTH, Circuit Judges

(Opinion filed March 18, 2011 )

_____

OPINION
_____

PER CURIAM

Wagdy Ibrahim, a native and citizen of Egypt, petitions for review of an order of

the Board of Immigration Appeals ("BIA") dismissing his appeal from the Immigration

Judge's ("IJ") decision denying his applications for relief from removal.  For the reasons

that follow, we will deny the petition for review.[1]

Ibrahim came to the United States in 1995 at the age of 15 as a lawful permanent resident. The Department of Homeland Security issued a notice to appear in 2008 charging that Ibrahim was subject to removal from the United States because he had been convicted of violating a law related to a controlled substance. The IJ found Ibrahim removable as charged. Through counsel, Ibrahim applied for cancellation of removal, which was denied.

During his hearing before the IJ, Ibrahim raised the possibility of persecution in Egypt on account of his Coptic Christian religion. Ibrahim had not applied for asylum or withholding of removal, but the IJ stated that if Ibrahim filed a timely motion to reopen with an asylum application, he would reopen the proceedings. Ibrahim did so, but the IJ denied reopening. On appeal, the BIA reopened the proceedings and remanded the record for a hearing on Ibrahim's application for asylum and withholding of removal.

On remand,[2] the IJ precluded Ibrahim from pursuing an additional ground for asylum based on his alleged membership in a particular social group of persons who had controlled substance convictions. Because Ibrahim presented his claim on the day of his

_____

[1] We recognize that there have been significant changes in the Egyptian government since this matter was before the BIA and IJ. Our review, however, is limited to the administrative record. See 8 U.S.C. § 1252(b)(4); Al-Fara v. Gonzales, 404 F.3d 733, 743 (3d Cir. 2005).

[2] The matter was before Judge Susan Roy on remand due to the retirement of Judge Henry Dogin, who had presided over the case.

merits hearing, the IJ did not allow him to pursue relief on this basis.

Regarding Ibrahim's religious persecution claim, the IJ decided that Ibrahim had testified credibly but he did not establish past persecution on account of his Coptic Christian religion. The IJ noted that Ibrahim only testified to discrimination when he lived in Egypt. The IJ also decided that Ibrahim did not establish a well-founded fear of persecution. The IJ believed that Ibrahim had a subjective fear of persecution and stated that the background evidence indicated that a possibility of persecution exists. The IJ explained, however, that Ibrahim's expert, Dr. Paul Marshall, testified that Coptic Christians generally suffer governmental and societal discrimination and harassment by Islamic extremists. The IJ recognized that Marshall testified that authorities would question Ibrahim upon his return to Egypt because he would not have a passport or identity document, but the IJ stated that Marshall could not say with any specificity what would happen to Ibrahim.

In concluding that Ibrahim failed to produce sufficient objective evidence showing a reasonable possibility that he would suffer religious persecution, the IJ noted Marshall's testimony that, if Ibrahim was detained and government officials discovered that he was a Coptic Christian, his religion in and of itself would not give rise to any significant harm. The IJ also noted Marshall's statements that Ibrahim's religion would be an "aggravating factor" along with his United States military service and his criminal record, and that, if these facts were discovered, Ibrahim would likely be detained overnight, interrogated, verbally accosted, and perhaps hit. Although the IJ noted that Marshall testified

3

that Ibrahim could be detained for a longer period and perhaps suffer additional physical mistreatment if he remained of interest to security officials, the IJ stated Marshall did not testify that Ibrahim would be tortured and emphasized that Marshall did not know of anyone who had returned to Egypt and had been detained, with the exception of persons who had converted from Islam to Christianity. Even if Ibrahim was detained as Marshall predicted, the IJ concluded Ibrahim had not shown that his treatment would rise to the level of persecution.

In addition to concluding that Ibrahim failed to meet his burden of proof for asylum and withholding of removal, the IJ decided Ibrahim did not satisfy his burden of proof for protection under the Convention Against Torture ("CAT"). The IJ recognized that the background evidence indicated that the government engages in torture, but she stated that there was no evidence showing that Ibrahim would be of interest to authorities or that authorities would have the specific intent to torture him. The IJ reiterated that Marshall was unable to provide an example of someone similarly situated to Ibrahim who had been harmed upon his return to Egypt.

The BIA dismissed Ibrahim's appeal. The BIA agreed with the IJ that Ibrahim failed to establish past persecution on account of his religion and noted that Ibrahim did not challenge that ruling on appeal. The BIA also rejected Ibrahim's argument that the IJ erred in refusing to allow him to submit evidence showing that his drug conviction would subject him to increased scrutiny upon entering Egypt, which would increase the likelihood that he would be identified as a Coptic Christian and persecuted. The BIA

4

found it was not improper for the IJ to reject Ibrahim's last-minute attempt to amend his claim at his hearing to include a fear of persecution on account of his status as a criminal deportee. The BIA also noted that the IJ assessed Ibrahim's religious persecution claim in conjunction with his experiences in the United States, including the fact that he has a criminal conviction.

The BIA also found an unpublished decision relied upon by Ibrahim, in which the BIA granted an Egyptian criminal deportee deferral of removal, distinguishable because the experts in that case had testified that there was a high likelihood of torture, an opinion not provided in Ibrahim's case. Noting that Marshall found the probability of harm to Ibrahim unclear, the BIA found no error in the IJ's decision that Ibrahim did not meet his burden of establishing a well-founded fear of future persecution. The BIA also found that Ibrahim did not establish that it was more likely than not that he would be tortured if removed to Egypt. This petition for review followed.

We have jurisdiction pursuant to 8 U.S.C. § 1252(a). Because Ibrahim is removable for violating a law related to a controlled substance, our jurisdiction is limited to reviewing constitutional claims and questions of law, which include questions of the application of law to fact, where the facts are undisputed. See 8 U.S.C. § 1252(a)(2)(C); Kamara v. Att'y Gen., 420 F.3d 202, 211 (3d Cir. 2005).

Ibrahim argues that he satisfied his burden of proof to establish that he has a well-

5

founded fear of persecution on account of his religion if removed to Egypt.[3]  We review the BIA's conclusion that Ibrahim failed to satisfy his burden of proof under the substantial evidence standard of review, which requires that we uphold the decision of the BIA unless the evidence compels a contrary conclusion.  Abdille v. Ashcroft, 242 F.3d 477, 483-84 (3d Cir. 2001).

Ibrahim contends that he satisfied his burden of proof with a "plethora of articles and country reports," Pet'r's Br. at 23, but he has not discussed any specific evidence from the background materials supporting his claim.  Ibrahim has set forth in his brief the testimony of his expert stating that he is likely to be detained if removed to Egypt due to his lack of identification, that security officials will question him, and that persons who are detained typically suffer abuse, including insults and physical abuse, with a lesser likelihood of torture.  Although Marshall further stated that Egyptian officials would view negatively Ibrahim's Coptic Christian religion, his criminal conviction, and his service in the United States military, the BIA correctly stated that Marshall did not testify to the probability of harm.  Ibrahim was required to show that harm rising to the level of persecution is a reasonable possibility should he be removed.  Abdille, 242 F.3d at 496.  Ibrahim has not shown that the record compels this conclusion.

---

[3]  Contrary to the Government's argument, we have jurisdiction to review this question, which requires the application of law to fact.  See Huang v. Att'y Gen., 620 F.3d 372, 384-87 (3d Cir. 2010) (addressing well-founded fear inquiry and explaining that whether a reasonable person would fear persecution presents a legal question).  Ibrahim argues that the evidence submitted established a well-founded fear of persecution; he does not dispute the facts related to his claim.

Ibrahim also argues that the BIA erred in upholding the IJ's decision to exclude testimony about how his criminal history will affect his treatment by Egyptian officials. Ibrahim asserts that the IJ committed "reversible legal error," Pet'r's Br. at 24, stating that his evidence was relevant to establish an increased likelihood that he would be subjected to heightened scrutiny, resulting in the discovery of his religion and persecution. Ibrahim states that he was not offering his evidence to establish that he would be persecuted on account of his criminal conviction.

The record reflects that the IJ precluded Ibrahim from asking Marshall questions related to his criminal convictions. The BIA correctly stated that Ibrahim was granted reopening to pursue his claim of religious persecution. Although Ibrahim argues that he was precluded from showing that he would be subject to heightened scrutiny, Marshall had already testified that authorities would question Ibrahim about his religion, why he is returning to Egypt, and his history in the United States. See A.R. at 164-65. Ibrahim does not explain what further testimony would have been provided. He has not shown any prejudice or that the IJ erred as a matter of law.

Ibrahim also argues in his brief that the background evidence and testimony establish that he will more likely than not be tortured if removed to Egypt. Ibrahim, however, does not point to any specific evidence supporting his CAT claim. Marshall did not testify that Ibrahim would more likely than not be tortured if removed. Ibrahim has not shown that the evidence compels the conclusion that he met his burden of proof for

7

protection under the CAT.[4]

Accordingly, we will deny the petition for review.

---

[4] To the extent Ibrahim also contends that the IJ erred in failing to give weight to an unpublished decision by the BIA, that decision, which involved an Egyptian alien who claimed he would be tortured if removed because of his criminal conviction, is distinguishable for the reasons stated by the BIA. See A.R. at 206-07.