**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 24-2280
_____

WILDE DANIEL OLIVARES-ARTEAGA; NOEMI ODARES PALACIOS-
RODRIGUEZ; KIYOSHI ISAI OLIVARES-PALACIOS; LUANA ABIGAIL
OLIVARES-PALACIOS,
Petitioners

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA
_____

ON PETITION FOR REVIEW OF AN ORDER OF
THE BOARD OF IMMIGRATION APPEALS
(Agency Nos. A220-344-204, A220-344-203, A220-344-205, A220-344-206)
Immigration Judge: Maria I. Akalski
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
July 7, 2025
_____

Before: SHWARTZ, FREEMAN, and RENDELL, <u>Circuit Judges</u>.

(Filed: July 9, 2025)
_____

OPINION[*]
_____

_____

[*] This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7,
does not constitute binding precedent.

**SHWARTZ**, Circuit Judge.

Wilde Daniel Olivares-Arteaga[1] petitions for review of the Board of Immigration Appeals's ("BIA") decision affirming the Immigration Judge's ("IJ") denial of his applications for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). For the reasons set forth below, we will deny his petition.

I

Olivares-Arteaga and his family are natives and citizens of Peru. While in Peru, they received threats from unidentified individuals.[2] Before receiving these threats, an explosive device intended for Olivares-Arteaga's brother-in-law detonated near the home where Olivares-Arteaga and his brother-in-law lived. His brother-in-law also received a threatening note demanding money. The brother-in-law moved out and Olivares-Arteaga reported this incident to the police.

Around this time, Olivares-Arteaga was in a taxi that "veered off" its route. AR 130. He feared the driver was kidnapping him and jumped out of the moving car, after which the driver drove away "as if he w[ere] fleeing." AR 131. Olivares-Arteaga did not see the driver again or report this incident to the police because he feared retaliation. On another occasion, Olivares-Arteaga and his family came home to find bullets and a note near the entry door to the house, which read: "we're leaving you a present." AR

---

[1] Olivares-Arteaga is the lead petitioner for his wife and two children.
[2] Olivares-Arteaga believed the individuals were Venezuelan extortionists and he submitted articles showing that Venezuelan gangs commit extortion in Peru.

129. He believed the extortionists who previously threatened his brother-in-law committed this act. Olivares-Arteaga reported this incident to the police, who said they would investigate it.

Olivares-Arteaga and his wife also received threatening calls and messages demanding money, telling them to "take care," and warning that they were "being watched." AR 132. His wife also noticed "suspicious people around" their house. AR 132. Olivares-Arteaga did not report these threats out of fear and he believed the extortionists targeted his family for its wealth.

About one month after the explosion near his house, Olivares-Arteaga and his family left Peru and entered the United States without authorization.[3] Since then, he and his family have received no threats and his property and family in Peru have not been harmed.

Because Olivares-Artega entered the United States without authorization, the Department of Homeland Security initiated removal proceedings under 8 U.S.C. § 1182(a)(6)(A)(i). Olivares-Arteaga and his family conceded that they were removable and sought asylum, withholding of removal, and CAT relief. The IJ denied the applications and ordered their removal. As to asylum and withholding of removal, the IJ determined that Olivares-Arteaga had not shown past persecution because the threats he

_____

[3] Olivares-Arteaga said that he and his family did not relocate within Peru because he feared they would continue to be targeted and that if they returned to Peru, the police would not protect them, because they had not done so in the past and there are "too few" officers and there is "corruption within the police." AR 143.

described were not sufficiently concrete and menacing given that (1) they did not involve physical harm or in-person confrontation, and (2) his belief that the taxi driver had tried to kidnap him was speculative. Further, the IJ determined that Olivares-Arteaga lacked a well-founded fear of future persecution on account of a protected ground because the particular social groups ("PSGs") in which he claimed membership, such as "family," lacked particularity. AR 60. The IJ found that, even construing his "family" PSG as "immediate family members of [his brother-in-law],"[4] the record showed he was targeted because of his wealth, not due to those familial ties. AR 61. As to his CAT claim, the IJ concluded that Olivares-Arteaga failed to show a likelihood that he would suffer torture if removed to Peru because (1) his past harm did not amount to torture, and (2) he did not establish government acquiescence to torture because he was able to file police reports and the police's failure to act was likely due to Olivares-Arteaga's inability to identify the perpretators. The BIA affirmed the IJ's decision without an opinion.[5]

Olivares-Arteaga petitions for review.

---

[4] Before us, Olivares-Arteaga adopts the IJ's construction of this PSG and abandons the other PSGs.

[5] A BIA opinion that affirms an IJ's ruling without reasoning does not violate due process. See Dia v. Ashcroft, 353 F.3d 228, 235 & n.2, 238-40 (3d Cir. 2003) (en banc) (concluding that the regulations allowing the BIA to affirm without an opinion, now codified at 8 C.F.R. § 1003.1(e)(4), comport with due process).

4

II[6]

A

Under the Immigration and Nationality Act, a noncitizen who enters the United States without permission is removable.  See 8 U.S.C. §§ 1182(a)(6)(A)(i), 1227(a)(1)(A).  A removable noncitizen is eligible for asylum if he demonstrates that he is "unable or unwilling to return to, and is unable or unwilling to avail himself . . . of the protection of [the country to which he would be removed] . . . because of persecution or a well-founded fear of persecution on account of . . . membership in a [PSG]."  8 U.S.C. § 1101(a)(42)(A).  A noncitizen is eligible for withholding of removal if he shows "that it is more likely than not that he . . . would be persecuted on account of . . . membership in a [PSG] . . . upon removal to [the designated] country."  8 C.F.R. § 1208.16(b)(2). To show persecution based on threats, the threat must be so "concrete and menacing" that it endangers "the petitioner's life or liberty."  Herrera-Reyes v. Att'y Gen., 952 F.3d 101, 110 (3d Cir. 2020); see, e.g., Chavarria v. Gonzalez, 446 F.3d 508, 521 (3d Cir. 2006)

---

[6] The IJ had jurisdiction under 8 C.F.R. § 1208.2, the BIA had jurisdiction under 8 C.F.R. § 1003.1(b)(3), and we have jurisdiction under 8 U.S.C. § 1252(a)(1).  See Garcia v. Att'y Gen., 665 F.3d 496, 502 n.4 (3d Cir. 2011).  Where the BIA adopts the IJ's reasoning, we review the IJ's decision.  See Nelson v. Att'y Gen., 685 F.3d 318, 321 (3d Cir. 2012) (citing Chavarria v. Gonzalez, 446 F.3d 508, 515 (3d Cir. 2006)).  We review legal determinations de novo and "accept factual findings if supported by substantial evidence."  Sesay v. Att'y Gen., 787 F.3d 215, 220 (3d Cir. 2015) (internal citation and quotation marks omitted).  Under the "deferential" substantial evidence standard, id., "the [agency's] finding must be upheld unless the evidence not only supports a contrary conclusion, but compels it," Abdille v. Ashcroft, 242 F.3d 477, 483-84 (3d Cir. 2001); 8 U.S.C. § 1252(b)(4)(B).

5

(concluding that threats made during robbery while victim was being held at gunpoint were concrete and menacing).

Even assuming the harms Olivares-Arteaga experienced or those that he claimed to fear amount to persecution and his PSG is cognizable, substantial evidence supports the IJ's conclusion that there was no nexus between the threats and the familial PSG.[7] The record shows that the extortionists targeted Olivares-Arteaga for his wealth, demanding large sums of money without mentioning his family. Further, Olivares-Arteaga's other family members in Peru have not been harmed, which supports the conclusion that Olivares-Arteaga's wealth, not hostility toward his family, motivated the extortion. See Shehu v. Att'y Gen., 482 F.3d 652, 657 (3d Cir. 2007); Garcia-Aranda v. Garland, 53 F.4th 752, 758 (2d Cir. 2022) (upholding finding of no persecution where petitioner was targeted due to "her perceived ability to pay" and "animus towards [the petitioner's family] was at most an incidental [factor]").

Thus, the IJ correctly denied Olivares-Arteaga's applications for asylum and withholding of removal.[8]

---

[7] Further, Olivares-Arteaga does not explicitly assert that the IJ erred in concluding there was no nexus between his proposed familial PSG and persecution, so has waived this argument. See Khan v. Att'y Gen., 691 F.3d 488, 495 n.4 (3d Cir. 2012) ("An issue is waived unless a party raises it in its opening brief, and for those purposes a passing reference to an issue will not suffice to bring that issue before this court." (quoting Skretvedt v. E.I. DuPont De Nemours, 372 F.3d 193, 202-03 (3d Cir. 2004)).

[8] Because Olivares-Arteaga did not show past persecution, he is not eligible for humanitarian asylum. 8 C.F.R. § 1208.13(b)(1)(iii)(B); see Al-Fara v. Gonzales, 404 F.3d 733, 740 (3d Cir. 2005) (holding that an applicant's failure to establish past persecution precludes humanitarian asylum relief). Thus the IJ's failure to consider this

B

The IJ also correctly denied Olivares-Arteaga CAT relief. To qualify for CAT relief, an applicant must show it is more likely than not that (1) he will be tortured if removed, 8 C.F.R. § 1208.16(c)(2), and (2) government officials will cause the feared torture or acquiesce to it, 8 C.F.R. § 208.18(a)(1). See Saban-Cach v. Att'y Gen., 58 F.4th 716, 733 (3d Cir. 2023).

Even if Olivares-Arteaga showed he would likely be tortured, which he has not done, substantial evidence supports the IJ's conclusion that he failed to show that the Peruvian government would acquiesce to his feared future harm. When Olivares-Arteaga filed police reports, the police indicated they would investigate the threats. Because he did not know the extortionists' identities, there was little further action the police could take. Thus, the IJ did not err in concluding that Olivares-Arteaga failed to show the government would acquiescce to the harm he fears. See Galeas Figueroa v. Att'y Gen., 998 F.3d 77, 93 (3d Cir. 2021) (holding that police "ineffectiveness" was not acquiescence where "incomplete leads [the victim] provided made the investigations more difficult"). Therefore, the IJ correctly denied Olivares-Arteaga CAT relief.

III

For the foregoing reasons, we will deny the petition.

---

form of relief is harmless. Furthermore, because Olivares-Artega "cannot meet the standard for asylum" he is "necessarily . . . unable to meet the standard for withholding of removal." Thayalan v. Att'y Gen., 997 F.3d 132, 138 (3d Cir. 2021).